64 Cal.App.4th 1534 (1998)
BARRY D. SHAPIRO, Plaintiff and Appellant,
v.
DAVID P. SUTHERLAND et al., Defendants and Respondents.
Docket No. B103078.
Court of Appeals of California, Second District, Division Three.
June 24, 1998.
*1537 COUNSEL
Gill & Baldwin and John M. Carmack for Plaintiff and Appellant.
Davis, Punelli, Keathley & Willard, Katherine D. Keathley and Jeff C. Marderosian for Defendants and Respondents.
OPINION
CROSKEY, J.
In this case, we review a summary judgment granted in favor of the defendants David P. and Mary Sutherland (the Sutherlands) and Prudential Resources Management, formerly known as Prudential Relocation *1538 Management[1] (Prudential; collectively, the defendants).[2] Plaintiff, Barry D. Shapiro, seeks to overturn the summary rejection of his complaint for rescission and damages arising out of a fraudulent misrepresentation and material nondisclosure which allegedly occurred in connection with his purchase of a residential property from the defendants. The trial court granted the Sutherlands' motion for summary judgment on the ground that they were "remote" sellers and lacked privity with the plaintiff; Prudential's motion for summary judgment was granted on the ground that it had made no misrepresentation to the plaintiff and was unaware of the information which plaintiff claims should have been disclosed.
Because we conclude the Sutherlands cannot escape liability for their express misrepresentation and failure to disclose material facts, we reverse the judgment as to them. However, the ruling of the trial court that Prudential was not liable for misrepresentation and nondisclosure was correct. Nonetheless, as plaintiff is seeking rescission of the sales contract with Prudential based on the Sutherlands' alleged fraud, Prudential, as the party to whom plaintiff paid the purchase price, is a necessary party. We therefore reverse the judgment in its favor as well.

FACTUAL AND PROCEDURAL BACKGROUND[3]
For a period of 15 years prior to August 31, 1992, the Sutherlands owned their home at 445 Eaton Drive, Burbank, California. David Sutherland was employed by IBM, which had an established employee relocation policy to assist employees who might be transferred to different parts of the country and be required to move. That relocation policy involved Prudential. When an employee required to move was unable to effect a timely and satisfactory sale of the family residence, Prudential would enter into an agreement with the employee (subject to certain conditions not relevant to this case) to purchase the property for a price established by three independent appraisals of the property.[4]
In the spring of 1992, David Sutherland accepted a promotional transfer to an IBM facility in the State of Washington. Unable to conclude a satisfactory sale of their home, the Sutherlands entered into a home purchase *1539 agreement with Prudential. Under the terms of that agreement, Prudential paid the Sutherlands $349,000. That transaction was ultimately concluded on August 31, 1992. However, the Sutherlands had moved from their home and left for Washington during the first week of July 1992.
It was while the Sutherlands were in Washington that they received and executed all of the relevant legal documents in this transaction. On August 19, 1992, the Sutherlands actually signed their home purchase agreement with Prudential. On the same date, they also signed a grant deed to their home. The deed which they signed and had notarized was left blank as to the name of the grantee.[5] These documents were then returned to Prudential. On August 28, 1992, the Sutherlands executed the disclosure form required of real property sellers by Civil Code section 1102.6.[6] Included on this form was the question: "Are you aware of any ... (11) Neighborhood noise problems or other nuisances." The Sutherlands checked the "No" box and then they both signed the form right below the printed certification that the "information herein is true and correct to the best of [their] knowledge as of the date signed by [them]."
This express representation was allegedly false and untrue. The record reflects without dispute that the Sutherlands' next-door neighbors (a family named Williams) were, over a period of years, a source of disturbing noises *1540 and commotion. Loud arguments and late night music had caused David Sutherland to call the police on a number of occasions.[7]
However, Prudential did not know of these matters. It had physical control of the Sutherland home at all times after the Sutherlands had vacated it in July of 1992, but the home remained unoccupied. Prudential attempted to resell the Sutherland home but was unable to do so for several months. Finally, in the spring of 1993, Prudential entered into negotiations with plaintiff and, on June 30, 1993, a firm agreement was reached under which plaintiff would purchase the property for $250,000 ($99,000 less than Prudential had paid the Sutherlands).
In a specific written addendum to the sale agreement which he signed with Prudential, dated July 8, 1993, plaintiff acknowledged awareness of the rather special nature of this transaction and Prudential's involvement in it. A relevant part of the addendum provides: "Buyer understands that Seller is a relocation management service and has never lived on or in the Property. The Property, including the contents (fixtures, appliances and personal property), being sold and purchased are not new, and are being sold "as is." in their present condition. Neither Seller nor any of its agents make any representations concerning the Property, including but not limited to, representations regarding the size of the buildings and improvements, the presence or absence of toxic or hazardous substances, or the presence or absence of any encroachments or unrecorded easements...."
The addendum also provided that plaintiff would undertake, at his own expense, an inspection of the property "to determine the existence of defects, if any." It is not clear whether plaintiff actually conducted any inspections to satisfy himself as to the condition of the property, but he did not advise Prudential of any discovered defects and the sale transaction closed on August 9, 1993. Prior to the close of escrow, on or about July 8, 1993, Prudential had delivered to plaintiff its own disclosure statement as required by Civil Code section 1102.3. However, Prudential had made several modifications to the standard form. It added the following in the section relating to "Substituted Disclosures": "Prudential Relocation Management has not *1541 occupied the subject property. Please see the disclosure statement prepared by the previous owner. Previous owner Sutherlands dated August 28, 1992."[8]
In order to close escrow on the sale to plaintiff, the grant deed previously executed by the Sutherlands on August 19, 1992, was filled in by Prudential with plaintiff's name as grantee and the deed was recorded with directions that, once recorded, it be mailed to plaintiff.[9] Plaintiff and his fiance and her son then moved in to the home; shortly thereafter, plaintiff claims to have discovered the loud noise and disturbance problems caused by the behavior of the Williams family living next door.
Unable to resolve to his satisfaction the problems created by such disturbances, plaintiff submitted a notice of rescission of the sale transaction to the Sutherlands on September 13, 1994. A copy of his attorney's letter conveying such notice, which also included the necessary offer to restore all consideration which he had received, was also sent to Prudential.
Plaintiff's demands were either rejected or ignored and, on December 23, 1994, he filed this action. He alleged several causes of action, including (1) fraudulent misrepresentation in violation of Civil Code section 1102 et seq.; (2) fraudulent concealment; (3) negligent misrepresentation; (4) rescission of the grant deed and restitution; and (5) counts for intentional and negligent infliction of emotional distress.[10] The defendants ultimately responded to this complaint by filing separate motions for summary judgment essentially on the grounds (1) as to the Sutherlands, that they were not the parties who had sold the property to plaintiff, had no contractual relationship with him, made no representations to him, and had no duty of disclosure and (2) as to Prudential, that it had no knowledge of a noisy neighbor problem or the Sutherlands' alleged misrepresentation with respect thereto and it was under *1542 no duty to conduct an investigation. The trial court agreed with the defendants and granted both motions.[11] After entry of judgment in favor of the defendants, plaintiff prosecuted this timely appeal.

CONTENTIONS
Plaintiff argues that the Sutherlands had common law and statutory obligations to disclose the neighborhood noise problem and their misrepresentation as to the nonexistence of that condition breached an obligation owed to plaintiff which entitles him to both legal and equitable relief. He also argues that Prudential had a duty under Civil Code section 1102 et seq., to make a reasonable investigation of the facts, and its act of simply forwarding the Sutherlands' false disclosure constituted a breach of its statutory obligations owed to plaintiff. The defendants dispute these contentions and repeat the arguments which persuaded the trial court.

*1543 DISCUSSION

1. Standard of Review

The principles which guide our review of the trial court's grant of the two summary judgment motions in this case are well settled. (1) Summary judgment is granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); Villa v. McFerren (1995) 35 Cal. App.4th 733, 741 [41 Cal. Rptr.2d 719].) After examining documents supporting a summary judgment motion in the trial court, this court independently determines their effect as a matter of law. (Homestead Ins. Co. v. American Empire Surplus Lines Ins. Co. (1996) 44 Cal. App.4th 1297, 1300 [52 Cal. Rptr.2d 268].) The moving party bears the burden of establishing, by declarations and evidence, a complete defense to plaintiff's action or the absence of an essential element of plaintiff's case. (Bacon v. Southern Cal. Edison Co. (1997) 53 Cal. App.4th 854, 858 [62 Cal. Rptr.2d 16]; Westlye v. Look Sports, Inc. (1993) 17 Cal. App.4th 1715, 1726-1727 [22 Cal. Rptr.2d 781]; Code Civ. Proc., § 437c, subd. (o)(2).) The moving party must demonstrate that under no hypothesis is there a material factual issue requiring a trial. (Flowmaster, Inc. v. Superior Court (1993) 16 Cal. App.4th 1019, 1026 [20 Cal. Rptr.2d 666], clarified in Romero v. American President Lines, Ltd. (1995) 38 Cal. App.4th 1199, 1202-1203 [45 Cal. Rptr.2d 421].)
When the defendant, as the moving party, makes that showing, the burden of proof shifts to the plaintiff, as the opposing party, to show, by responsive separate statement and admissible evidence, that triable issues of fact exist. (Lorenzen-Hughes v. MacElhenny, Levy & Co. (1994) 24 Cal. App.4th 1684, 1688 [30 Cal. Rptr.2d 210]; Code Civ. Proc., § 437c, subd. (o)(2).) "`[An] issue of fact becomes one of law and loses its triable character if the undisputed facts leave no room for a reasonable difference of opinion. [Citation.]' [Citation.]" (Preach v. Monter Rainbow (1993) 12 Cal. App.4th 1441, 1450 [16 Cal. Rptr.2d 320].)
As a summary judgment motion raises only questions of law regarding the construction and effect of supporting and opposing papers, this court independently applies the same three-step analysis required of the trial court. We identify issues framed by the pleadings; determine whether the moving party's showing establishes facts that negate the opponent's claim and justify a judgment in the moving party's favor; and, if it does, we finally determine whether the opposition demonstrates the existence of a triable, material factual issue. (Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.4th 1238, 1252-1253 [32 Cal. Rptr.2d 223, 876 P.2d 1022]; AARTS Productions, Inc. v. *1544 Crocker National Bank (1986) 179 Cal. App.3d 1061, 1064-1065 [225 Cal. Rptr. 203].)
Our resolution of this matter requires us to examine the common law and statutory duties of a seller of real property to disclose matters to a buyer, whether such burden of disclosure was owed by either or both of the defendants to the plaintiff, whether such duties were breached by either or both of them, and, finally, if a duty was breached, the nature of plaintiff's remedies.

2. The Common Law and Statutory Disclosure Obligations of a Real Property Seller

a. Common Law Duty of Disclosure

(2) Generally, where one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known or reasonably discoverable by the other party, then a duty to disclose exists. (Goodman v. Kennedy (1976) 18 Cal.3d 335, 347 [134 Cal. Rptr. 375, 556 P.2d 737].) In the context of a real estate transaction, "[i]t is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property ... and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citations.]" (Lingsch v. Savage (1963) 213 Cal. App.2d 729, 735 [29 Cal. Rptr. 201, 8 A.L.R.3d 537]; see also Sweat v. Hollister, supra, 37 Cal. App.4th at p. 608.) Undisclosed facts are material if they would have a significant and measurable effect on market value. (Reed v. King (1983) 145 Cal. App.3d 261, 267 [193 Cal. Rptr. 130].) A breach of this duty of disclosure will give rise to a cause of action for both rescission and damages. (Karoutas v. HomeFed Bank (1991) 232 Cal. App.3d 767, 771 [283 Cal. Rptr. 809].)
Whether or not the seller has actual knowledge of an undisclosed fact is obviously a question of fact, although in this case there does not seem to be any dispute on the point, at least as far as the Sutherlands are concerned. However, whether the matter which was not disclosed was of sufficient materiality to have affected the value or desirability of the property is also a question of fact (Alexander v. McKnight (1992) 7 Cal. App.4th 973, 977 [9 Cal. Rptr.2d 453]; Lingsch v. Savage, supra, 213 Cal. App.2d at p. 737), which we assume would be seriously contested by the Sutherlands (see fn. 7, ante).

*1545 b. Statutory Duty of Disclosure

Effective January 1, 1987, California imposed a very specific disclosure requirement upon covered residential real estate sellers.[12] Indeed, the statutory language specifies the precise disclosure form to be used. (Civ. Code, § 1102.6.) As is relevant to this case, the form requires a seller[13] to answer whether he or she is aware of any "neighborhood noise problems or other nuisances" and, if so, to describe them. As already indicated, the Sutherlands completed and signed such a form. They answered this question in the negative.
However, there is no question that these statutory provisions would impose a duty of disclosure on the Sutherlands as to the existence of any "neighborhood noise problems or other nuisances." Whether the conduct of their next-door neighbors, the Williams family, constituted such a condition appears to be a disputed issue of fact which must be resolved at trial.
With respect to the discharge of this statutory duty of disclosure, the Legislature also provided that each disclosure shall be made in "good faith," which was expressly defined to mean "honesty in fact in the conduct of the transaction." (Civ. Code, § 1102.7.) The specification of particular matters to be disclosed was not intended to limit or abridge any obligation for disclosure by any other provision of law which may exist to avoid fraud or deceit in the transfer transaction. (Civ. Code, § 1102.8.)
With respect to a remedy for violation, the statute provides: "No transfer subject to this article shall be invalidated solely because of the failure of any person to comply with any provision of this article. However, any person who willfully or negligently violates or fails to perform any duty prescribed by any provision of this article shall be liable in the amount of actual damages suffered by a transferee." (Civ. Code, § 1102.13, italics added.) However, no transferor may be held liable for any error or inaccuracy or omission in a disclosure statement if such "error, inaccuracy, or omission was not within the personal knowledge of the transferor . ., and ordinary care was exercised in obtaining and transmitting it." (Civ. Code, § 1102.4, subd. (a), italics added.)

*1546 3. Application of Disclosure Principles to This Case

a. As to the Sutherlands

(3a) Applying these principles to this case, we conclude that the Sutherlands had a common law and statutory obligation to make a full disclosure as to these disturbances caused by the Williams family (if they in fact occurred and were of sufficient import as to materially affect the value or desirability of their property and/or amounted to a "neighborhood noise problem" or a "nuisance"  an issue which the trial court cannot resolve in this case on summary judgment). (Alexander v. McKnight, supra, 7 Cal. App.4th at p. 977.) The Alexander court dealt with the impact of a neighbor's noisy activity amounting to a nuisance. It held that a plaintiff would be required to disclose such fact on a section 1102.6 form and it could have an adverse affect on value (although a negative impact on value could be mitigated by issuance of a restraining order against the neighbor). "The purpose of section 1102.6 requires that it be liberally interpreted so that a buyer will be fully informed on matters affecting the value of the property to be purchased. This means that in a case like this a seller cannot take a revisionist view of history ignoring what has occurred in the past with its implicit representation to a potential buyer that the neighborhood is  and has been  an oasis of tranquillity in our otherwise oppressive urban environment. We assume the Legislature's decision to exclude whether the neighborhood difficulties have been resolved by court order from the prescribed disclosure form reflects its intent that a judgment ordering a neighbor to be `neighborly' cannot be equated with the nonexistence of such problems." (7 Cal. App.4th at p. 977.)

b. As to Prudential

(4) It is undisputed that Prudential had no knowledge of the problems which the Sutherlands had with the Williams family and we have been cited to no persuasive authority imposing upon Prudential a duty to investigate. In arguing for the existence of such a duty, plaintiff relies entirely upon the provisions of Civil Code section 1102.5.[14] We do not believe that section imposed any investigatory obligation on Prudential under the facts of this case. Nothing in this record suggests that any reasonable investigation which Prudential might have conducted would have detected the sporadic disturbances caused by the Williams family. Whatever burden Prudential had *1547 under Civil Code section 1102.5 was satisfied by its expressed disclaimer (to which plaintiff made no objection), plaintiff's assumption of the investigation burden and the receipt, review and transmittal of the Sutherlands' disclosure statement, the accuracy of which Prudential had been given no reason to doubt. Prudential clearly disclosed that it had no information with respect to the Sutherland property. It made clear its particular involvement in what actually amounted to a sale from the Sutherlands to the plaintiff; indeed, Prudential's disclaimers were accompanied by plaintiff's express agreement to conduct his own investigation with respect to the property. Prudential did deliver the Sutherlands' disclosure statement, but without any knowledge or any reason to believe that it was less than accurate. We see no evidence in this record of any deceitful or negligent conduct on the part of Prudential. Thus, Prudential could have no liability under the disclosure statute. (Civ. Code, § 1102.4, subd. (a).)
Quite obviously, this same lack of knowledge or duty to investigate would also preclude any common law liability for fraud or nondisclosure to be asserted against Prudential. For example, for Prudential to be liable to plaintiff for a negligent misrepresentation, it would have to have made a false statement to plaintiff, honestly believing it to be true, but without a reasonable ground for such belief. However, if Prudential's belief was both honest and reasonable, then the misrepresentation would be an innocent one and there would be no liability. (See 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 720 at p. 819.) The facts before us clearly point to this latter conclusion. Prudential passed on the Sutherlands' disclosure statement which allegedly contained a false statement about the existence of a neighborhood noise problem. At the same time, Prudential expressly stated that it had no personal knowledge with respect to the property and solicited and received plaintiff's express agreement to conduct his own investigation. Under these circumstances, it would not be possible to conclude that Prudential's disclosure statement (even were we to assume that it had "adopted" the Sutherlands' statement) was false; nor could plaintiff claim to have relied upon it. The statutorily required representation regarding "neighborhood noise" was couched in terms of an awareness of such a condition. Prudential made it clear that it had no such awareness. No evidence to the contrary was presented by plaintiff and thus no triable issue of fact was raised with respect to Prudential's liability. Thus, the trial court's ruling as to Prudential's lack of knowledge of the noisy neighbor problem or any possible misrepresentation by the Sutherlands, and lack of duty to investigate the property, was correct.[15]
Therefore, if plaintiff is to recover against anyone for misrepresentation, it must be against the Sutherlands. However, they argue that even if their *1548 representation was false or they are guilty of a seller's nondisclosure, they breached no obligation as to the plaintiff. As to him, they were a "remote seller." We now turn to that issue.

4. Sutherlands' Duty of Disclosure Did Extend to Plaintiff

(5) It is true that in order for a defendant to be liable for fraud, he or she must intend that a particular representation (or concealment) be relied upon by a specific person or persons. (5 Witkin, Summary of Cal. Law, supra, Torts, § 707, at p. 807.) However, it is also established that a defendant cannot escape liability if he or she makes a representation to one person while intending or having reason to expect that it will be repeated to and acted upon by the plaintiff (or someone in the class of persons of which plaintiff is a member). (Geernaert v. Mitchell (1995) 31 Cal. App.4th 601, 605-606 [37 Cal. Rptr.2d 483]; Simone v. McKee (1956) 142 Cal. App.2d 307, 313-314 [298 P.2d 667].)
This is the principle of indirect deception described in section 533 of the Restatement Second of Torts (section 533): "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved." Comment d to section 533 makes it clear the rule of section 533 applies where the maker of the misrepresentation has information that gives him special reason to expect that the information will be communicated to others and will influence their conduct. Comment g goes on to explain that it is not necessary that the maker of the misrepresentation have the particular person in mind. It is enough that it is intended to be repeated to a particular class of persons.
This principle has been recognized in California by a number of cases. (Geernaert v. Mitchell, supra, 31 Cal. App.4th at pp. 605-606 [real property purchasers may recover for fraud and concealment against party who owned the property prior to the seller where such party had made fraudulent misrepresentations and nondisclosures regarding significant structural and foundational problems and intended or had reason to expect that such representation would be repeated to subsequent buyers]; Barnhouse v. City of Pinole (1982) 133 Cal. App.3d 171, 191-192 [183 Cal. Rptr. 881] [plaintiff who suffered personal injury and property damage from soil subsidence and who purchased home from the original owner is entitled to sue developer for fraudulent concealment regarding problems on the land involving seeps, *1549 springs and slides even though he never directly dealt with him]; Varwig v. Anderson-Behel Porshe/Audi, Inc. (1977) 74 Cal. App.3d 578, 580-581 [141 Cal. Rptr. 539] [a used car dealer was liable for fraudulent misrepresentation as to title to a vehicle purchased by the plaintiff from the party who had purchased it from the defendant dealer and to whom the defendant, knowing that the party intended to resell it, had made the misrepresentation].) Thus, it is clear in California that an action for deceit does not require contractual privity. (Barnhouse v. City of Pinole, supra, 133 Cal. App.3d at p. 191; Lingsch v. Savage, supra, 213 Cal. App.2d at p. 736; Wice v. Schilling (1954) 124 Cal. App.2d 735, 745 [269 P.2d 231].)
The Sutherlands rely on, and persuaded the trial court to accept, the rule announced in the case of Cohen v. Citizens Nat. Trust etc. Bank (1956) 143 Cal. App.2d 480 [300 P.2d 14]. In that case, the plaintiff alleged that the original owner of the property had unlawfully added basement apartments without a permit and sold them with the intent to defraud the buyer and subsequent purchasers, one of whom was plaintiff. After plaintiff purchased the property, he was cited by a government agency and suffered damages totaling approximately $50,000. The defendant, a bank which had succeeded to the interests of the deceased original owner, successfully demurred to plaintiff's complaint and it was dismissed. The court held that a "person uttering misrepresentations is liable only to those in whom he intended to induce reliance and who do rely in the manner intended" (143 Cal. App.2d at p. 484); however, the plaintiff in Cohen was a stranger to any misrepresentation or concealment made with respect to the sale to plaintiff's grantor by the original owner. Thus, the original owner could not have intended to induce any action by the plaintiff and was not liable to him.
This reasoning by the Cohen court may well have accurately reflected California law in 1956;[16] but it certainly does not do so today. Indeed, since the adoption of section 533 in 1976 and its almost immediate acceptance in California (see Varwig v. Anderson-Behel Porsche/Audi, Inc., supra, 74 Cal. App.3d at p. 581), the principle of indirect deception has been recognized and the contrary and more restrictive view of Cohen has been rejected.[17] The same may be said of the other two pre-1977 cases relied upon by the Sutherlands. (See Bell v. Renaldo (1975) 51 Cal. App.3d 779 [124 *1550 Cal. Rptr. 233]; Carlson v. Murphy (1935) 8 Cal. App.2d 607, 609-612 [47 P.2d 1100].)
(3b) Here, the Sutherlands unquestionably knew, or at least must be charged with knowing, that Prudential was performing a service for IBM, as David Sutherland's employer, and implementing or making possible a significant employee benefit. They knew or had to know that Prudential was simply guaranteeing the sale of their home to someone at an agreed price (in this case, $349,000). If that price could not be obtained by the Sutherlands directly, then Prudential would pay them the agreed amount and take on the burden and risk of making that sale to someone. That someone turned out to be the plaintiff, and Prudential (or, more likely, IBM) absorbed the negative price differential which was sustained. The Sutherlands signed a blank grant deed and clearly authorized Prudential to fill in the name of the grantee. Thus, not only did Prudential never take record title in its own name, but the Sutherlands also can be charged with knowledge of that fact.
In short, the Sutherlands had to know and realize that Prudential intended to sell the property as quickly as possible; and since Prudential had no knowledge of the property or any of its problems, other than that disclosed by the Sutherlands, then they also had every reason to expect that their written statutory disclosure statement would be delivered to the purchaser when he or she ultimately was located. These circumstances are clearly sufficient to satisfy the principles of the indirect deception doctrine. Assuming, arguendo, the materiality of the misrepresentation and concealment regarding the "neighborhood noise problem" represented by the activities of the Williams family, the Sutherlands are subject to common law liability to plaintiff for intentional and/or negligent misrepresentation as well as statutory liability under Civil Code section 1102 et seq. Therefore, the trial court's order granting summary judgment in favor of the Sutherlands was error.

5. Plaintiff's Remedies

a. Damages

Assuming he can prove all of the factual elements of his misrepresentation and nondisclosure claims, plaintiff is entitled to recover such damages from the Sutherlands as he can prove. (Karoutas v. HomeFed Bank, supra, 232 *1551 Cal. App.3d at p. 771.) Whether plaintiff ultimately will be able to show entitlement to an award of damages against the Sutherlands will depend upon trial proceedings and evidentiary matters we have no need to anticipate or discuss. However, one point related to the nature of such potential damages bears mention. At oral argument, plaintiff's counsel specifically noted his concern that plaintiff had been ordered to pay Prudential's attorney fees because of an attorney fees provision in the contract of sale and purchase between Prudential and plaintiff, and that because of the unique nature of this transaction, plaintiff, even if ultimately successful in his action against the Sutherlands, would not be entitled to a similar recoupment of his own attorney fees, there being no contract, and hence no attorney fees provision, between plaintiff and the Sutherlands.[18] We note that any such attorney fees as may be paid or incurred by plaintiff to Prudential as a result of this lawsuit might be recoverable under the "third party tortfeasor" rule. (6) In California, it is the rule that attorney fees incurred through instituting or defending an action as a direct result of the tort of another are recoverable damages. (Sindell v. Gibson, Dunn & Crutcher (1997) 54 Cal. App.4th 1457, 1470 [63 Cal. Rptr.2d 594]; Prentice v. North Amer. Title Guar. Corp. (1963) 59 Cal.2d 618, 620-621 [30 Cal. Rptr. 821, 381 P.2d 645].) On the same theory, in addition to such attorney fees as plaintiff may be required to pay to Prudential, plaintiff may also recover the reasonable attorney fees which he incurred to file and prosecute a successful action against Prudential to rescind the contract of purchase and sale because of the Sutherlands' alleged misrepresentations.[19]

b. Rescission

To obtain rescission, plaintiff must rescind not the deed but the contract of purchase and sale between himself and Prudential, given that (1) the grant deed, signed by the Sutherlands, was merely the instrument by which Prudential, which already had paid the Sutherlands for the property, performed (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 880, pp. 789-790; Schultz v. County of Contra Costa (1984) 157 Cal. App.3d 242, 247 [203 Cal. Rptr. 760]), and (2) it was to Prudential that plaintiff paid the purchase price. Thus, it is from Prudential that plaintiff must seek the return of that consideration. Although there was no evidence that Prudential made any misrepresentations to plaintiff, nonetheless, because of the nature of this particular transaction by which the property was transferred, Prudential must *1552 remain a party to the action because, in its absence, complete relief in the form of rescission cannot be accorded to plaintiff in the event plaintiff can prove a case for rescission. (Code Civ. Proc. § 389, subd. (a).) We thus conclude that Prudential is a necessary party to the action to the extent that plaintiff seeks the equitable remedy of rescission of the contract of sale.
(7) Trial courts have broad equitable power to fashion any appropriate remedies. (Zarrahy v. Zarrahy (1988) 205 Cal. App.3d 1, 4 [252 Cal. Rptr. 20].) In doing so, they may consider any unjust or harsh results, and adopt means to avoid them. (See, e.g., Casas v. Thompson (1986) 42 Cal.3d 131, 141 [228 Cal. Rptr. 33, 720 P.2d 921].) "Equitable relief is by its nature flexible, and the maxim allowing a remedy for every wrong (Civ. Code, § 3523) has been invoked to justify the invention of new methods of relief for new types of wrongs. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 3, p. 681.) In actions founded on contract, courts have available for use in appropriate cases, in addition to specific performance, equitable remedies based on reformation, excuse of conditions and rescission (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 382, 772, 883-885, pp. 347-348, 697, 791-794), as well as quasi-specific performance by constructive trust (11 Witkin, Summary of Cal. Law, supra, Equity, § 28, pp. 706-707), and indirect enforcement of a covenant by negative decree (id., § 61, pp. 737-38)." (Advanced Micro Devices, Inc. v. Intel Corp. (1994) 9 Cal.4th 362, 390 [36 Cal. Rptr.2d 581, 885 P.2d 994].)
Thus, for example, in Javor v. State Board of Equalization (1974) 12 Cal.3d 790 [117 Cal. Rptr. 305, 527 P.2d 1153] a car purchaser who had paid state sales taxes on a car price, which price included refundable federal excise taxes, brought a class action for money due and an accounting against the State Board of Equalization and all state retailers of new vehicles and accessories. A general demurrer by the State Board of Equalization was sustained by the trial court and a judgment of dismissal was entered. The car purchaser appealed. The California Supreme Court, noting that it was required to fashion "an appropriate remedy to effect the customers' right to their refund which is consonant with existing statutory procedures" (id. at p. 800), held, in relevant part, that although the customer did not have a direct cause of action against the board, he could join the board as a party to the suit in order to require the board, in response to refund applications from the retailers, to (1) pay the refunds owed the retailers into court, or (2) provide proof to the court that the retailer had already claimed and received a refund from the board.
Upon remand to the trial court in Javor, the trial court ordered the board to make refunds to the defendant retailers, from whom, in turn, the consumer-purchaser class plaintiffs could then recover their refunds. The board *1553 appealed, and the appellate court affirmed the trial court's judgment, noting: "In the case before us there is no issue as to the taxes due and owing from the retailers to the Board. The amount of the excess taxes collected from the plaintiffs by the dealers and how it is to be refunded to the plaintiffs, the consumer-purchaser class[,] is all that is here involved. In making viable the judicial remedy given to the plaintiffs, the dealers are merely required to act as conduits as to the refunds due to the plaintiffs." (Javor v. State Bd. of Equalization (1977) 73 Cal. App.3d 939, 950 [141 Cal. Rptr. 226], disapproved on another ground [appropriateness of a class action], Woosley v. State (1992) 3 Cal.4th 758, 792 [13 Cal. Rptr.2d 30, 838 P.2d 758].)
Here, before this lawsuit was filed, Prudential essentially acted as a legal conduit through which property and money exchanged hands. Requiring Prudential to remain a party to the lawsuit puts it back into the same position in order that an equitable result may be obtained. Should plaintiff prevail, we are confident that the trial court has full authority under the provisions of Civil Code section 1692 and the above-noted principles of equity to fashion a full and fair remedy in its judgment which takes into account and equitably addresses the respective rights and interests of all of the participants in these very unusual factual circumstances.[20]

DISPOSITION
The judgment in favor of Prudential, as against the plaintiff,[21] is reversed. The judgment in favor of the Sutherlands, as against the plaintiff, is reversed. The matter is remanded for further proceedings consistent with the views expressed herein. Plaintiff shall recover his costs on appeal.
Klein, P.J., and Kitching, J., concurred.
NOTES
[1] This business entity is a division of Prudential Residential Services Limited Partnership, with its principal place of business located in the State of Illinois.
[2] There were other defendants named in plaintiff's complaint, but the claims against them apparently have been resolved and they are not parties to this appeal.
[3] The facts which we recite are not in dispute. They are taken from the moving defendants' statement of undisputed facts and/or from documents submitted in evidence and reasonable inferences drawn therefrom.
[4] Although the record is not clear on the point, we assume that Prudential's involvement is effectively funded or guaranteed in some manner by IBM. It seems obvious that the benefit provided by Prudential to a transferred employee otherwise unable to sell the family residence serves the ultimate interests of IBM.
[5] In the declaration of David Sutherland filed in support of the Sutherlands' motion for summary judgment, he states that he was unaware that the grant deed which he and his wife signed on August 19, 1992, did not name a grantee. However, we note that the written home purchase agreement which the Sutherlands entered into with Prudential expressly provided, in relevant part: "You agree that after we sign this agreement and upon our request you will transfer to us, or to someone we designate, a good and marketable title to the property. The transfer will be by a deed in a form and containing such warranties of title as we shall approve. You may be requested by us to sign a deed on which the name of the grantee has been omitted. The deed and warranties will be consistent with local custom in the area where the property is located. You must sign the deed and deliver it to us at the time you move from the property or when we sign this agreement, whichever is later." (Italics added.)
[6] Civil Code Section 1102.6 sets out a legislatively mandated disclosure form which is required to be provided by the seller of a covered parcel of real property to the prospective transferee "as soon as practicable before transfer of title." (Civ. Code, § 1102.3, subd. (a).) A seller's willful or negligent failure to comply will make the seller liable to the transferee for the actual damages suffered. (Civ. Code, § 1102.13.)

"The genesis of this legislation was Easton v. Strassburger (1984) 152 Cal. App.3d 90 [199 Cal. Rptr. 383, 46 A.L.R.4th 521], which imposed liability on a seller of real property and his agent for failure to disclose facts affecting the value of residential property. The legislation was sponsored by the California Association of Realtors to provide a framework for formal disclosure of facts relevant to a decision to purchase realty. The statute therefore confirms and perhaps clarifies a disclosure obligation that existed previously at common law. (See Sen. Bill No. 1406 (1985-1986 Reg. Sess.) 3d reading analysis, Aug. 20, 1985.)" (Sweat v. Hollister (1995) 37 Cal. App.4th 603, 608, fn. 2 [43 Cal. Rptr.2d 399], disapproved on another ground in Santisas v. Goodin (1998) 17 Cal.4th 599, 609, fn. 5 [71 Cal. Rptr.2d 830, 951 P.2d 399].)
[7] In a declaration filed in support of a summary judgment motion, David Sutherland attempts to paint a different picture of the relations which he and his wife had with the Williams family, but he does not dispute the facts summarized above. All his declaration accomplishes is to underscore the point that there may be a serious factual dispute as to whether the actions of the Williams family over a 15-year period actually constituted (1) a "neighborhood noise problem" so as to make the Sutherlands' written denial of such problem false and untrue, or (2) a matter materially affecting the value or desirability of the property so as to require its disclosure under general common law rules (see post). These, of course, are factual questions which cannot be resolved on a motion for summary judgment.
[8] It is not clear from the record whether the Sutherlands' August 28, 1992, disclosure statement was delivered together with Prudential's statement on July 8, 1993, or at some other time. Plaintiff admits having received the Sutherlands' statement but he is not sure of the date.
[9] Thus, until August 9, 1993, the Sutherlands had remained the record owners of the property.
[10] Also named as plaintiffs were plaintiff's fiance and her son. They joined with plaintiff only with respect to the emotional distress causes of action. They were not parties to the purchase or recipients of any representations or nondisclosure made by defendants. No arguments have been advanced by plaintiff in support of these claims and we deem them to have been waived. (Tisher v. California Horse Racing Bd. (1991) 231 Cal. App.3d 349, 361 [282 Cal. Rptr. 330].)
[11] In announcing its ruling on the defendants' separate summary judgment motions, the trial court stated:

1. As to the Sutherlands' motion: "[They are] entitled to a [] summary judgment, there being no triable issue of material fact. [¶] The only misrepresentation alleged by the plaintiff was checking the disclosure form "no" under the heading, quote, neighborhood noise and nuisance. [¶] Even presuming a noisy neighbor fits the category and should have been disclosed, there is no duty existing as to Sutherlands and the plaintiff. Sutherlands did not sell the property to the plaintiffs. And the court is unaware of any common law [duty] to disclose noisy neighbors except as provided for in Civil Code sections 1102 et seq. Therefore, no tort can be separately stated and no duty arises under the code to make a disclosure. [¶] I find no cases nor have any cases been cited to this court that says that a successor and a person that comes into title at some later time can go back and sue a former owner for an alleged failure to disclose. [¶] I will also state that I am far from convinced that a noisy neighbor meets the category of disclosure or arises [sic] to that category requiring a disclosure, but that is not the basis for the court's order."
2. With respect to the grant of Prudential's motion, the trial court explained its reasoning as follows: "There is no evidence that Prudential or any of its agents had any actual notice of the neighbors' propensity as set forth above. Nor that they were required to disclose nor did they disclose anything based on knowledge. [¶] The code section requiring disclosure only relates to knowledge and does not require an independent investigation, which under the facts of this case would have been  nothing could have been disclosed or determined. [¶] Plaintiff suggests a duty to investigate, but it would not have been possible to discover the neighbors' conduct with any reasonable efforts. The court notes that no representative of Prudential occupied the premises. The conduct of the neighbors was sporadic and the extent of the conduct could not be determined in the short time that Prudential owned the property  that is, one year.... [¶].... Negligent [sic] to provide a representation that was incorrect. And under the code they are the  they contend they are the transferors of the property and they are obligated to make those representations, and they failed to make a correct representation. [¶] [Prudential] had no knowledge of the falsity of the representation. [It] could not have found out anything different, because [it] never lived in the property. Therefore [it] chose, by furnishing [plaintiff] a copy of a declaration or disclosure a year before by [its] former sellers, [it] simply furnished that along with [its] own disclosure  being one that, of course, [it] couldn't have checked off those boxes. There is no representation. [It] furnished that for [plaintiff's] information."
[12] We use the term "covered" real estate sellers simply to indicate that Civil Code section 1102 et seq., does not apply to all residential real estate transfers. However, those exceptions are not relevant to this case. There is no dispute that the statute applied to the sale of the Sutherlands' home.
[13] The form set forth in Civil Code section 1102.6 uses the terms "seller" and "seller's information." However, the statutory burden of making disclosures is imposed on "transferors." This is so because the statute applies to residential real property transactions that might not be characterized as sales (e.g., lease with option to purchase). However, we merely note this for accuracy; it makes no difference in this case and in our discussion of the issues presented by these statutory provisions, we will use the term "seller."
[14] Civil Code section 1102.5 provides, in relevant part: "If at the time the disclosures are required to be made, an item of information required to be disclosed is unknown or not available to the transferor, and the transferor or his or her agent has made a reasonable effort to ascertain it, the transferor may use an approximation of the information, provided the approximation is clearly identified as such, is reasonable, is based on the best information available to the transferor or his or her agent, and is not used for the purpose of circumventing or evading this article."
[15] Although this ruling was correct, we nonetheless reverse the judgment in favor of Prudential for the reasons stated, post.
[16] However, even that conclusion is open to some question. (See Crystal Pier Amusement Co. v. Cannan (1933) 219 Cal. 184, 188 [25 P.2d 839, 91 A.L.R. 1357].)
[17] BAJI No. 12.50 (1996 rev.), relating to fraud and deceit with respect to persons not in privity with the defendant, provides in pertinent part:

"[One who [makes a [misrepresentation] [or] [false promise]] [or]] [conceals a material fact] is subject to liability if [he] [she] intends [or] [has reason to expect] that the [misrepresentation] [or] [false promise] [concealment of material fact] will be passed on to another person and influence such person's conduct in the [type of] transaction involved. [¶] [A person has reason to expect that a [misrepresentation] [false promise] [nondisclosure of material fact] will be passed on to [a] [other] person[s] and influence that [person's] [persons'] conduct if [he] [she] has information that would lead a reasonable person to conclude that there is a likelihood that it will reach such [person] [persons] and will influence [him] [her] [them] or [his] [her] [their] conduct in the [type of] transaction involved.]"
[18] However, if plaintiff is successful in rescinding the sale contract with Prudential (see infra), that may resolve the issue of Prudential's attorney fee claim based on a provision in that contract.
[19] Obviously, plaintiff's entitlement to recoupment of any attorney fees as damages arising from the Sutherlands' allegedly tortious behavior depends upon plaintiff's success in proving that tortious conduct in fact occurred.
[20] It is apparent to us that the nature and scope of the equitable relief, if any, which may be appropriate in this matter is something which will likely only become clear upon a full evidentiary record. (See, e.g., Nakash v. Superior Court (1987) 196 Cal. App.3d 59, 71 [241 Cal. Rptr. 578].) Here, factual issues related to IBM's role in this transaction (including any possible guarantee against loss which may have been provided by IBM to Prudential), and to the issue of which party or parties will be ultimately responsible for the restoration of funds paid by plaintiff, if he is found to be entitled to rescission, remain to be determined.
[21] See footnote 10, ante.