William B. WHITE, Plaintiff/Appellant,

v.

Doris BOWMAN, Douglas R. Eckhoff, Sandy L. Eckhoff, and Relocation Properties Management, LLC, Defendants/Respondents.

No. SD 29631.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 3, 2009.

Motion for Rehearing or Transfer to Supreme Court Denied Nov. 25, 2009.

Richard L. Schnake, Neal & Newman, LLP, Springfield, MO, Timothy S. Davis, Branson, MO, for Appellant.

Craig F. Lowther, Kory D. Stubblefield, Lowther Johnson, Springfield, MO, for Respondents.

DAVID DUNLAP, Senior Judge.

William B. White (plaintiff) appeals the judgment of the Circuit Court of Greene County dismissing his claims against defendants Douglas R. Eckhoff and Sandy L. Eckhoff (Eckhoffs) and granting summary judgment in favor of defendant Doris Bowman (Bowman). We affirm the summary judgment for Bowman. We reverse the dismissal as to Eckhoffs and remand to the trial court for further proceedings.

The Bowman summary judgment record contains evidentiary matter beyond the scope of Eckhoffs' motion to dismiss. Certain documentary materials, useful for narrative purposes although not properly before the trial court on either branch of the case, are contained in a Supplemental Legal File to which no party has objected. While our factual recital mentions· all explanatory portions of the record, we disregard both the summary judgment facts and the extraneous documents in appraising the bare sufficiency of plaintiff's petition to survive dismissal. *L.C. Dev. Co. v. Lincoln County*, 26 S.W.3d 336, 339 (Mo. App.2000).

The record as a whole shows that Eckhoffs owned and resided at a house on acreage in rural Greene County. Douglas Eckhoff was employed by Ashland, Inc. In 2002, Ashland asked Mr. Eckhoff to relocate, and Eckhoffs resolved to sell the property.

On·August 7, 2002, Eckhoffs entered a brokerage agreement with Bowman, a li-

censed real estate salesperson with ERA Jones–Rutherford Realtors. Incident to that listing, Eckhoffs completed a seller's disclosure statement. The statement included specific "check-off" items relating to flood zones, flood plains, or wetland areas; drainage or flood problems; water leakage or seepage in the house; water leakage, seepage, accumulation, or dampness in the basement or crawlspace; mold or fungi; and repairs or other attempts to control any water or dampness. Eckhoffs checked "No" for each of these items.

A legend on the disclosure statement, directly above Douglas Eckhoff's and Sandy Eckhoff's signatures, declares in part:

> The undersigned Seller represents that the information set forth in the foregoing disclosure statement is accurate and complete. Seller does not intend this disclosure statement to be a warranty or guaranty of any kind. Seller hereby authorizes the Broker to provide this information to prospective buyers of the property and to real estate brokers and sales people.

Doris Bowman did not sign the disclosure statement.

On October 21, 2002, Relocation Properties Management, LLC, (RPM) sent Bowman a listing referral for the Eckhoff property. RPM identified itself as a limited liability company "which operates in part as a referral service for relocating employees of Ashland Inc." The listing referral identified the "client" as Doug Eckhoff. Bowman accepted the referral on October 23, 2002, and on December 17, 2002, Bowman and RPM entered a listing agreement. That document identified by mailing address "the subject matter of this agreement" as the Eckhoff property.

Debra Rose and Jim Barrett, nonparties to this action, controlled a limited liability company known as DJRB Investments, Inc. (DJRB). On the day of the RPM/Bowman listing agreement, RPM and Rose executed a real estate contract for sale of the property to DJRB. Because RPM, the named seller, did not then own the subject property, the contract was made contingent upon (1) Doug Eckhoff's acceptance of a purchase offer by RPM, and (2) closing on an Eckhoff/RPM sale contract (not exhibited of record, if extant) prior to closing on the RPM/DJRB contract.

The contingencies were contained in an addendum, Addendum A, to the RPM/DJRB contract. The addendum further declared that RPM "is a non-resident owner and has no knowledge as to the condition of this property except for any inspections/reports given to the listing agent." A two-page disclosure statement prepared by RPM as "seller," dated October 21, 2002, was also attached. The disclosure statement reiterated RPM's disclaimer of knowledge in identical language, and represented all property conditions, including flood plain location and flood damage to the premises, as "[u]nknown."

On December 26, 2002, while all actual and notional contracts remained executory, Bowman sent a sixteen-page facsimile transmission to plaintiff, who, according to his petition, was then "contemplating a loan to Rose and Barrett to finance the purchase of the [p]roperty." The fax included the RPM/DJRB real estate contract, Addendum A, and both Eckhoffs' and RPM's disclosure statements.

For reasons not revealed by the record, the Eckhoff/RPM and RPM/DJRB conveyances were never consummated. Instead, on January 9, 2003, Eckhoffs, as husband and wife, executed a general warranty deed conveying the property to Debra Rose and Jim Barrett, individuals, as joint

tenants.[1] To finance the purchase, Rose and Barrett borrowed $195,000 from plaintiff, who took back a promissory note and deed of trust, neither of which is exhibited of record. According to the petition, the deed of trust was also dated January 9, 2003.

According to Bowman's summary judgment affidavit, just prior to the closing she accompanied Rose and Barrett on a "final walkthrough" of the house. In the course of that viewing, the three "noticed a small amount of mold or mildew on the wall near the window in the downstairs room that was used for an office by the sellers." Bowman "suggested at that time that it be cleaned," but the buyers "ignored the mold or mildew, continued the walkthrough, and did not mention it again."

Not long after taking possession, Mr. Barrett grew mortally ill and died, first conveying to plaintiff by quitclaim on April 23, 2003, all his interest in the subject property. Soon afterward, Rose declared Chapter 7 bankruptcy. Ultimately, according to his petition, plaintiff foreclosed the deed of trust and acquired record title to the property.

On January 7, 2005, plaintiff brought the present action against Eckhoffs, Bowman, and RPM. As to Eckhoffs, plaintiff asserted claims for fraudulent and negligent misrepresentation; against Bowman and RPM, he charged fraudulent misrepresentation and concealment. Plaintiff further alleged that the actual value of the property was less than the purchase price paid by Rose and Barrett and that the diminished value resulted from conditions fraudulently or negligently misrepresented or concealed. According to the petition, the property actually lay in a flood zone and had suffered flooding, poor drainage, dampness, seepage, and mold. It pled

that Eckhoffs misrepresented these conditions in their seller's disclosure statement of August 7, 2002, and that Bowman misrepresented or concealed these conditions by failing to inform plaintiff of the falsity of Eckhoffs' disclosures. The claim against RPM charged liability in respondeat superior for the actions of Bowman, its alleged agent.

No defendant answered the petition, but each moved separately to dismiss for failure to state a claim on which relief might be granted. Subsequently, Bowman moved for summary judgment. Bowman's supporting affidavit attested that "prior to the walkthrough with the buyers," she "had not seen, witnessed, or experienced any of the alleged problems with the property," and no one ever told her of, or represented to her, "any problems or defects with the property which could have adversely impacted its value, usability, or habitability."

The trial court entered judgment against plaintiff and in favor of all defendants, sustaining both Bowman's motion for summary judgment and Eckhoffs' and RPM's motions to dismiss. Plaintiff's Notice of Appeal was filed February 6, 2009. We judicially notice that on May 21, 2009, plaintiff dismissed his appeal as to RPM only.

### Motion to Strike Portions of Plaintiff's Statement of Facts

Eckhoffs moved to strike portions of the Statement of Facts from plaintiff's brief, and we took the motion with the case. Eckhoffs protest plaintiff's mentioning both the standard of review and a separate contract addendum not before the trial court within his Statement of Facts.

---

1. No separate written real estate sale contract is alleged to have been made between Eckhoffs and Rose/Barrett, nor was any such contract exhibited to the trial court.

Because the applicable standard of review is disputable, the standard for which an appellant contends should appear in the argument portion of his brief. "The *argument* shall also include a concise statement of the applicable standard of review for each claim of error." Rule 84.04(e) (emphasis added). Concordantly, Rule 84.04(c) directs that the statement must provide a fair and concise account of "the *facts* relevant to the questions presented for determination *without argument.*" (Emphasis added.) Eckhoffs' objection is well-taken in principle.

We find, however, that the questioned reference is oblique, fragmentary, and justified by the context of its use. It reads in full:

> To the extent, then, that the appeal involves the Eckhoffs, against whom the claim was dismissed for failure to state a claim upon which relief could be granted, this Court views the facts stated in the petition as true and construes them liberally in favor of [plaintiff]. [*Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008).] [²] Facts with respect to Bowman, to the extent that they do not overlap with these, derive from the summary judgment documents.

■ Eckhoffs' motion does not pray that the appeal be dismissed, but only that the misplaced reference be stricken. In general, an appeal will be dismissed for briefing infractions only when their effect is to frustrate review. *Christeson v. State*, 131 S.W.3d 796, 799 n. 5 (Mo. banc 2004). The applicable standard of review, of which the disputed fragment is only a part, appears in full within the argument section of plaintiff's brief. That being so, we treat the mislaid redundancy as mere surplusage. *Brune v. Rathbun*, 204 S.W.2d 705, 706 (Mo.1947).

■ Eckhoffs further move to strike the sentence, "By an addendum, the purchasers were changed to Rose and Barrett rather than their limited liability company." They argue that because plaintiff did not plead a formal substitution of buyers, and because dismissal for failure to state a claim is reviewed solely upon the pleadings, such reference is forbidden.

The subject addendum appears only in plaintiff's Additional Suggestions opposing the motions to dismiss. It was neither a petition exhibit nor a summary judgment exhibit. Because a motion to dismiss is not a pleading, *Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120 (Mo.App.2009), *Platonov v. The Barn, L.P.*, 226 S.W.3d 238, 240 (Mo.App.2007), we infer that suggestions directed to such a motion are, similarly, not pleadings. Accordingly, the addendum was not before the trial court on the motion to dismiss and is not before us on review. *Miller v. River Hills Development*, 831 S.W.2d 756, 757 (Mo.App. 1992) ("Unless the record on appeal demonstrates that the documents purportedly relied upon in the trial court were properly made part of the trial record, we cannot say that they were considered by the trial court and they may not be considered on appeal.").

Nonetheless, the contract addendum plays no part in our review of the Eckhoff dismissal. Under the issues presented, a formal accession to the substitution of buyers would tend neither to support nor vitiate the judgment under review. Plaintiff's reference to the contract addendum may therefore be disregarded as superfluous. *Brune v. Rathbun, supra.*

### Eckhoffs' Motion to Dismiss

The trial court sustained Eckhoffs' and RPM's motions to dismiss Count I, finding

---

2. The citation to *Lynch* is contained in a footnote rather than in the main text of plaintiff's brief. We import the footnoted citation for ease of reference.

that because "plaintiff only had a contract and agreement with Rose and Barrett," the moving defendants "could not have misrepresented [to] the plaintiff." Plaintiff maintains (Point I) that in so ruling, the court erroneously declared and applied the law because a fraudfeasor may be liable to a claimant not in privity who is damaged by the fraud.

▮ Appellate review of a disposition by motion to dismiss is *de novo. Keeney v. Missouri Highway and Transp. Com'n,* 70 S.W.3d 597, 599 (Mo.App.2002). Like the trial court, the reviewing court determines whether the petition invokes principles of substantive law warranting relief upon the facts alleged. *Id.* In determining the sufficiency of a pleading, the court takes all factual allegations as true and construes them in the light most favorable to the pleader. *Id.*

▮ Plaintiff's petition charges Eckhoffs with negligent and fraudulent misrepresentation. The elements of fraudulent misrepresentation are: "(1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury." *Crossland Const. Co., Inc. v. Alpine Elec. Const. Inc.,* 232 S.W.3d 590, 592–93 (Mo.App. 2007).

▮ The elements of negligent misrepresentation are: "(1) speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the

information was false; (3) speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) listener justifiably relied on the information; and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss." *Harris v. Smith,* 250 S.W.3d 804, 808 (Mo.App.2008). Failure of proof as to any one of these elements is fatal to either claim. *Id.*

▮ The trial court rested its dismissal on the basis that plaintiff "only had a contract and agreement with Rose and Barrett. There was no contract [between plaintiff and] any of these defendants. Therefore, [Eckhoffs and RPM] could not have misrepresented the plaintiff [sic]." The trial court evidently believed that absent some contractual relation with Eckhoffs, plaintiff would enjoy no right to rely on their representations. We cannot agree.

▮ Plaintiff's action alleges fraudulent inducement to contract, the breach of a precontractual tort duty. "[The seller's] duty to speak arose from its superior knowledge prior to the execution of this contract. The presence of a clause disclaiming warranties in a contract does not negate a pre-contractual duty to speak. *See Artilla Cove Resort, Inc. v. Hartley,* 72 S.W.3d 291, 299 (Mo.App. S.D.2002)." *Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758, 767 (Mo.banc 2007). Contrary to the trial court's stated conclusion, privity of contract between the parties is not an element of fraudulent misrepresentation, *Westerhold v. Carroll,* 419 S.W.2d 73, 77 (Mo.1967), or negligent misrepresentation, *AAA Excavating, Inc. v. Francis Const., Inc.,* 678 S.W.2d 889, 893 (Mo.App.1984).

▮ Nevertheless, if a judgment is supportable on any basis, it should be af-

firmed no matter the basis on which the trial court chose to ground it. *Board of Regents v. Harriman,* 857 S.W.2d 445, 448 (Mo.App.1993). According to Eckhoffs' motion, plaintiff's petition alleges no facts showing that they communicated the disclosure statement or authorized its communication, or that Bowman was their agent. The petition concedes that the statement came to plaintiff by fax transmission from Bowman. Eckhoffs point out that in making the transmission, Bowman purported to act solely as the agent of RPM, the named seller in the contract with DJRB, to which Eckhoffs were not parties.

Whatever Bowman's purport, though, the petition alleges facts showing that in reality she acted for Eckhoffs. It says Eckhoffs enlisted Bowman, Bowman "marketed the [p]roperty," and Bowman was a licensed real estate salesperson. Real estate salespersons list property for sale on behalf of the owner, § 339.010.1(4), and in doing so act as owner's "limited agent," § 339.730. Eckhoffs owned the property at all times. These facts support a finding of agency. *See, Hodges v. State,* 462 S.W.2d 786, 789 (Mo.1971) (allegation of taking from "employee" warranted inference that employee was agent of property owner).

▬▬▬ Also contrary to purport, it is undisputed that RPM never took title to the property. Thus, RPM never acquired an interest in the subject matter of Bowman's purported agency on its behalf. "The authority of an agent is derived from his principal, who alone generally has an interest in the subject matter relative to which the agent's power or authority is to be exercised." *Chamberlain v. Grisham,* 360 Mo. 655, 658, 230 S.W.2d 721, 722 (1950). Indeed, the petition alleges facts showing that RPM itself was acting as Eckhoffs' agent in enlisting Bowman, Eckhoffs' own broker, for the abortive DJRB contract. A subagent is directly responsible to a principal in privity with her, *Butler County v. Boatmen's Bank,* 143 Mo. 13, 44 S.W. 1047, 1051–52 (1898), and nothing in § 339.770, cited by Eckhoffs, remotely suggests otherwise.[3]

The petition clearly alleges facts supporting its conclusory allegation that "Ms. Bowman, as Eckhoffs' real estate agent, had authority to fax the Eckhoffs' disclosure statement to plaintiff." Neither the trial court's reason for dismissing the petition (no contract), nor Eckhoffs' alternative argument on appeal (no authority), warrants that result. Because plaintiff's Count I invokes principles of substantive law entitling plaintiff to relief should his allegations be proven *prima facie* and found true by a trier of fact, we reverse that portion of the judgment dismissing Count I.

### Bowman's Motion for Summary Judgment

Plaintiff's Count II asserted claims of fraudulent misrepresentation and fraudulent concealment against Bowman. Bowman moved for summary judgment as to both theories, supporting the motion with her affidavit attesting that in many visits to the Eckhoff property prior to the final walkthrough with Rose and Barrett, she never observed any of the water-related

---

**3.** *See also Shapiro v. Sutherland,* 64 Cal. App.4th 1534, 76 Cal.Rptr.2d 101 (1998), wherein residential sellers conveyed to a relocation management company, which reconveyed to buyers. Buyers were given the original sellers' disclosure statement, and relied on its representations in making the purchase. The court held that because the relocation company had no knowledge of the property, "[the original sellers] had *every reason to expect* that their written statutory disclosure statement would be delivered to the purchaser." *Id.* at 1550, 76 Cal.Rptr.2d 101 (emphasis in original).

conditions alleged by plaintiff and was never told of any such problems. Citing § 339.190.2, Bowman argued that not knowing of any adverse conditions, and not having signed Eckhoffs' disclosure statement, she had no duty to disclose anything to plaintiff. Plaintiff's response neither admitted nor denied this avowal, but asserted "[w]hatever the facts may be, they are not material." The trial court granted the motion, ruling in full:

> Defendant Bowman's Motion for Summary Judgment is sustained. Defendant Bowman did not sign the disclosure statement. As a result of RSMO 339.190.2, Defendant Bowman cannot be held liable under the issue of the disclosure statement. Defendant Bowman had no contract or agreement with the plaintiff. Defendant Bowman made no oral false representations to plaintiff. Therefore, there are no genuine issues of material fact in dispute and as a matter of law, Defendant Bowman's Motion for Summary Judgment is sustained by the court.

Plaintiff's appeal asserts error in three respects. He contends the trial court erroneously declared and applied the law, in that an oral misrepresentation is not required to establish fraudulent concealment (Point II); that privity of contract is not required to establish fraudulent misrepresentation or concealment (Point III); and that Bowman's nonsignatory role is irrelevant because she knew prior to closing that the statement was false (Point IV).

■ Appellate review of a summary judgment is de novo. *Shelter Mut. Ins. Co. v. State Farm Mut. Auto Ins. Co.*, 223 S.W.3d 905 (Mo.App.2007). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Briar Road, L.L.C. v. Lezah Stenger Homes, Inc.*, 256 S.W.3d 131,

135 (Mo.App.2008). A defending party's motion for summary judgment is properly granted if the movant shows that the undisputed facts negate any one element of plaintiff's cause of action. *Patterson v. Warten, Fisher, Lee & Brown, L.L.C.*, 260 S.W.3d 417, 419 (Mo.App.2008).

To establish a claim of fraudulent misrepresentation, a claimant must show (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of the representation's falsity or ignorance of its truth, (5) the speaker's intent that the representation be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the truth of the representation, (8) the hearer's right to rely thereon and (9) the hearer's consequent and proximate injury. *Hess v. Chase Manhattan Bank, USA, N.A., supra*, at 765.

■ Concealment of a material fact can serve as a substitute for the elements of a false representation if there exists a duty to disclose. *Reeves v. Keesler*, 921 S.W.2d 16, 21 (Mo.App.1996). A duty to disclose exists where there is a relationship of trust and confidence between the parties or where one party has superior knowledge or information of a material fact that is not within the fair and reasonable reach of the other party. *Reeves v. Keesler, supra; Seidel v. Gordon A. Gundaker Real Estate Co., Inc.*, 904 S.W.2d 357, 361 (Mo.App.1995). Information is not within the fair and reasonable reach of a party if it is not discoverable by due diligence. *Hess v. Chase Manhattan Bank, USA, N.A., supra.*

Plaintiff concedes that Bowman made no affirmative representations concerning the property, but acted simply as a conduit of Eckhoffs' representations. Section

339.190.2, relied on by the trial court, provides:

> 2. A real estate licensee shall not be the subject of any action and no action shall be instituted against a real estate licensee for any information contained in a seller's disclosure statement for residential, ... real estate furnished to a buyer, unless the real estate licensee is a signatory to such or the licensee knew prior to closing that the statement was false or the licensee acted in reckless disregard as to whether the statement was true or false.

■ Bowman's uncontroverted affidavit plainly defeated both the misrepresentation and concealment claims arising from her transmittal of Eckhoffs' disclosure statement. The affidavit showed that at that time, Bowman knew nothing subject to revelation. This negated an essential element of concealment, defendant's superior knowledge. *See Coleman v. City of Kansas City*, 859 S.W.2d 141 (Mo.App. 1993) (summary judgment properly granted where uncontroverted materials showed that defendant did not possess the subject land at the time of plaintiff's injury, an essential element of a premises liability claim).

■ Bowman's only knowledge of any undisclosed adverse condition was gleaned during her final walkthrough with the buyers, when she detected "a small amount of mold or mildew on the wall near the window in the downstairs room that was used for an office by the sellers." Plaintiff's sole residual claim is that Bowman was obliged to disclose this last-minute discovery because it put her on notice that Eckhoffs' disclosures were false (Point IV). We assume, without so deciding, that the "small amount of mold or mildew" would have been a "material" fact in plaintiff's decision whether to make the loan. The question is simply whether Bowman was duty-bound to tell him about it.

■ For purposes of fraudulent concealment claims, a duty to disclose arises only if the material fact is not discoverable through the exercise of ordinary diligence. *Hess v. Chase Manhattan Bank, USA, N.A., supra*, at 765–66; *Mobley v. Copeland*, 828 S.W.2d 717, 726 (Mo. App.1992).

> The concept of fraud liability based upon nondisclosure couches reliance in terms of the availability of the information to the plaintiff and the plaintiff's diligence. *VanBooven [v. Smull]*, 938 S.W.2d [324] at 328 [(Mo.App.W.D.1997)]. A plaintiff asserting fraud must show that the undisclosed information was beyond his or her reasonable reach and not discoverable in the exercise of reasonable diligence. *Id.* ... A person is entitled to rely on a representation (1) where he or she lacks equal facilities for learning the truth; (2) where the facts are peculiarly within the knowledge of the speaker and difficult for the hearer to ascertain; (3) where the representation relates to latent defects; (4) where it would be necessary to employ a third person to make an examination in order to discover the truth because of the hearer's ignorance and inexperience; and (5) where the employment of an expert would be required. *VanBooven*, 938 S.W.2d at 329.

*McClain v. Papka*, 108 S.W.3d 48, 52 (Mo. App.2003). *See also, Richards v. ABN AMRO Mortgage Group, Inc.*, 261 S.W.3d 603 (Mo.App.2008).

The mold or mildew that Bowman discovered at the final walkthrough was plainly visible both to her and to the buyers, Rose and Barrett. Plaintiff admits that no one forbade him to inspect or view the property, either on that occasion or at any other time. Prior to making the loan, plaintiff saw no property inspection re-

ports and commissioned no appraisal or inspection.[4]

On this record, the factors outlined in *McClain v. Papka, supra,* show that plaintiff and Bowman were equally equipped to discover the "small amount of mold or mildew." The condition was not latent and no expert scrutiny was necessary to see it; according to Bowman, the buyers saw it too, but "ignored" it. So far as the record reveals, the buyers never informed plaintiff of their discovery.

■■ A party's right to rely is ordinarily a question of fact for a jury. *Colgan v. Washington Realty Co.,* 879 S.W.2d 686, 690 (Mo.App.1994). Summary judgment is appropriate, however, when the facts demonstrate an agent is on equal footing with plaintiff in discovering the material condition claimed to have been concealed or not disclosed. *Id.* at 691. Here we find, *de novo,* that this "equal footing" was clearly established because "ordinary diligence" on plaintiff's part would have revealed the condition. The trial court did not rule on this basis, but it could as well have done so, and that is all that matters. *Board of Regents v. Harriman, supra.* The result was correct.

Plaintiff's Point I is sustained. The judgment granting Eckhoffs' motion to dismiss is reversed and the cause remanded for further proceedings on that branch of the case. Plaintiff's Points II, III, and IV are denied and the summary judgment for Bowman is affirmed.

SCOTT, C.J., and LYNCH, P.J., concur.

---

4. Plaintiff controverted the assertion that he "did not inspect the subject property at any relevant time," because his agent Yocum inspected the house on several occasions. Yocum's affidavit, however, reveals that he inspected the property only "when Debbie [sic] Rose resided in the house and when it was foreclosed." These inspections occurred *after* the purchase.