[Civ. No. 3961. Second Appellate District, Division One.—October 27, 1922.]

## L. M. MEEKER, Respondent, v. GEORGE E. CROSS, Appellant.

[1] FRAUD—SALE OF STOCK—REPRESENTATIONS AS TO VALUE—IMPUTED KNOWLEDGE.—In this action to rescind a sale of corporate stock, because of alleged fraudulent representations by the defendant as to the value thereof, the fact of the defendant's relationship to the corporation, he having been one of the largest stockholders, as well as a director and the president thereof, did not constitute grounds upon which to impute to defendant knowledge of the financial condition of the business of the corporation, or cause him to believe that the value of the stock was other than as he represented, he having taken no part in the direct conduct of the business, and it having been shown that he based his belief as to the value of the stock upon information afforded by the statements and reports of the manager in charge and other subordinate employees and of an expert accountant.

[2] ID.—WORTH OF STOCK—OPINION—RELIANCE ON.—The mere naked statement, made by defendant to plaintiff, that the stock was worth a specified sum per share constituted but an opinion in the nature of a trade talk, and as such plaintiff was not justified in relying thereon.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Reversed.

The facts are stated in the opinion of the court.

Thos. C. Ridgway and Jesse A. Gyger for Appellant.

Jeff P. Chandler and Howard Wright for Respondent.

SHAW, J.—Defendant appeals from a judgment rescinding a sale of 100 shares of the corporate stock of the Puente Mercantile Company made by him to plaintiff on February 7, 1920.

As alleged in the complaint, the court, among other facts, found: (a) That on the seventh day of February, 1920, the defendant was, and for some ten years had been, president of said Puente Mercantile Company; (b) that defendant as such officer had full and complete charge of the business

operations of the company, and was entirely familiar with the extent of its indebtedness and the business which it had been conducting and which it was then transacting, and with the extent of the profit which it was then deriving in the carrying on of the business; (c) that at the time that plaintiff purchased from defendant the 100 shares of the capital stock of the Puente Mercantile Company defendant falsely and fraudulently represented to plaintiff that said 100 shares of the capital stock of the Puente Mercantile Company were of the value of at least $100 per share; (d) that said statement and representation was false and fraudulent, and (e) was known to said defendant to be so at the time it was made; (f) that said statement and representation was made by the defendant to the plaintiff with the intent to deceive and defraud plaintiff; (g) that plaintiff, believing the representation to be true and relying thereon, purchased the stock; (h) that said statement and representation so made by the defendant to the plaintiff, as above stated, was a positive assertion, made in a manner not warranted by the information of the defendant making it, and that said statement and representation was untrue.

As made, these findings bring the case within section 1572 of the Civil Code, which defines actual fraud as consisting "in any of the following acts, committed by a party to the contract, . . . with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as to a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."

While conceding that defendant was and, as found by the court, had been president of the company for ten years, and represented to plaintiff that the stock was worth $100 per share, appellant challenges the sufficiency of the evidence to support these findings in all other respects.

It appears from the record that defendant was a stockholder and president of the First National Bank of Puente; a stockholder of the Puente Savings Bank; and stockholder and president of the Puente Mercantile Company, all of which were located and conducted business in Puente, California. Plaintiff being desirous of obtaining a controlling

interest in the two banks, entered into negotiations with defendant for the purchase of his stock therein, as a result of which he, on February 7, 1920, purchased from defendant 125 shares of the First National Bank at $200 per share, and 109 shares of the stock of the Puente Savings Bank at $150 per share; and on the same day purchased 100 shares of the capital stock of the Puente Mercantile Company for the price of $100 per share. In payment therefor he gave to defendant his check for $43,350, being full cash payment for the bank stock, and $2,000 on account of the purchase price of the Mercantile Company stock, for the balance of the purchase price of which he gave to defendant his note for $8,000 secured by the 100 shares of the Puente Mercantile Company. The only testimony touching the representations made by defendant to plaintiff as to the value of the mercantile stock is that in which plaintiff testifies that "in a conversation which I had with Mr. Cross and which I think took place in the office of the Puente Mercantile Company at Puente, Mr. Cross said that he could use some more money and would like to sell me an interest in the Mercantile Company and would like to sell me his home in Puente as he was going out of the banking business. . . . I asked him about the Mercantile Company stock. He said it was worth $100 a share. Mr. Cross took me up and showed me his home, and I looked it over and I told him I would not be interested in buying the home—went back and talked about the Mercantile Company stock, and I decided to buy $10,000 worth." And, further, that he believed the representations to be true and relied thereon.

On the date of the purchase defendant executed a document as follows:

"I, George E. Cross, of Puente, California, having this day sold to L. M. Meeker, of El Monte, California, 125 shares of the First National Bank of Puente, 109 shares of the Puente Savings Bank, and 100 shares of the Puente Mercantile Company, and the good will accompanying same, for valuable considerations, do hereby agree to assist L. M. Meeker in procuring additional bank stock and agree to give all the good will and support possible to him and the banks in which he may be interested in Puente.

"It is further agreed that I will not become interested in, directly or indirectly, any other bank in Puente for five years without the written consent of L. M. Meeker."

It further appears that while defendant was president of the Mercantile Company and was in its place of business for a few minutes each day, he was not actively engaged in the conduct thereof, which was in charge of W. E. Newton, as manager in the conduct and management of the business. On February 11th W. E. Newton was taken ill, and Mr. Guy V. Newton, who was vice-president, took charge of the business as manager. It was the custom of the company from time to time to have Arthur Loomis, a certified public accountant, examine the books, and his report of the condition of the business, made on February 14, 1919, for the preceding year of 1918, showed a surplus above capital existing on December 31, 1918, of upwards of $7,000. On March 10, 1920, he completed an audit of the books for the preceding year of 1919, an inventory of which was furnished by W. E. Newton as general manager of the company, and with which defendant is shown to have had no connection and given no information. From this report it appeared the company had outstanding 499 shares of capital stock the par value of which was $100 per share, with a surplus on December 31, 1919, of upward of $7,700, and that the company on June 19, 1919, had paid a dividend of $6,250 on its capital stock. That after the making of this report and subsequent to the time when plaintiff purchased his stock, Guy V. Newton, then vice-president and acting manager of the corporation, to whom the corporation was indebted for money loaned to it in the sum of $5,000, purchased from the corporation fifty shares of its treasury stock at par, and in March, 1920, being subsequent to the time of plaintiff's purchase of stock from defendant, the latter, to whom the corporation was indebted in the sum of $4,000 for money loaned to it, purchased at par forty shares of treasury stock from said corporation. Both Newton and defendant testified that they thought the stock was worth par. Upon the report made by the accountant who audited the books, the company made an income-tax return for the year 1919 showing a taxable income of $7,249, which return was made prior to March 15, 1920, and signed by Guy V. Newton as treasurer of the company, who testified that at the

time he believed the corporation had earned a profit for the year 1919; and in the same month, to wit, March, 1920, Newton as treasurer made a report to the state board of equalization showing a gross business done during the year 1919 of about $300,000, with a surplus of assets of $6,396. Later, in July or August, 1920, Guy V. Newton, as acting manager of the corporation, began an investigation of the affairs thereof, as a result of which he came to the conclusion that the value of the stock at that time was some $50 per share, and so reported to both plaintiff and defendant. Notwithstanding such information, which Mr. Newton gave to plaintiff and which the court found that plaintiff believed, he took no action in the matter, and a little later an accountant other than Loomis, namely, one Robert F. Mackie, was employed to audit the books, and an inventory of the assets was had as of date September 30, 1920, as a result of which it was discovered that errors had been made during preceding years in bookkeeping and in the inventory upon which the report of Loomis had been based, and that the capital stock of the company on January 1, 1920, was not worth in excess of $50 per share, and, due to losses made during the year 1920, of less value on September 30th. Thereafter, upon the information so disclosed by this last report of the accountant, and on November 3, 1920, plaintiff caused to be served upon defendant a notice of rescission of the sale for fraud, and demanded a cancellation of the note so given as part of the purchase price and the repayment of the $2,000 in cash made thereon, and at the same time offered to surrender the stock so purchased, followed by this action for a rescission.

Under subdivision 1 of section 1572 of the Civil Code a false representation, though accompanied by an intent to deceive, is not of itself sufficient to constitute actionable fraud. It is essential that it be made to appear that the party making the false representation did not at the time believe it to be true. Conceding, as heretofore stated, that the representation as to the value of the stock so made by defendant to plaintiff was untrue, the evidence disclosed by the record is, in our opinion, insufficient, to warrant the finding that the representation was known by defendant to be false and untrue at the time when made. [1] Conceding, as claimed by respondent, that defendant was one of the largest stockholders of the company and had for ten

years occupied the position of a director and president thereof; that it was his custom to visit its place of business wherein he spent a few minutes each day and was by other directors consulted upon matters of importance affecting the interests of the company, and that it was a heavy borrower from the bank of which defendant was president, such facts, considered alone (and they are all to which counsel for plaintiff directs our attention in support of the finding) constitute no grounds upon which to impute to defendant knowledge of the financial condition of the business of the company, or cause him to believe that the value of the stock was other than as he represented it. On the contrary, most potent evidence of defendant's good faith in the transaction is furnished by uncontradicted testimony that both he and Guy V. Newton, then manager of the company, shortly after the sale to plaintiff, purchased from the corporation treasury stock which they considered worth par and for which they paid $100 per share; that, as appears from a report made by an expert accountant employed by the company, it had made upward of $7,000 during the year 1918, and had, on June 19, 1919, paid a dividend of $6,250 on its capital stock; that covering such period its treasurer had made return of an income statement to the government showing earnings for the year 1919 to have been $7,249, and made a similar report to the board of equalization of the state. Defendant's position as president was, as appears from the record, largely that of a figurehead. He took no part in the direct conduct of the business, which was in charge of a manager, with subordinate employees, and as such president he was warranted in basing his belief as to the value of the stock upon information afforded by the statements and reports of such subordinates and expert accountant. The case presented is quite similar to the facts involved in that of *Nash* v. *Rosesteel,* 7 Cal. App. 504 [94 Pac. 850], where it was sought to recover damages for a fraudulent representation made by the president of a corporation in a sale of his stock. There the representation was that a dividend of six per cent had been declared and paid by the company to its stockholders covering the period from July 1, 1901, to January 1, 1902. Relying upon this representation, the plaintiff therein purchased the stock. Later it was learned that, while the corporation had

paid the dividend, it was not paid out of its earnings or surplus, by reason of which fact the action of the board of directors, although based upon an inventory and balance-sheet furnished by those intrusted with the preparation of the same, was illegal. In that case this court said: "Conceding that the books of the company and this inventory exhibited an erroneous condition of the business, it is not, and, indeed, under the evidence, could not be, claimed that either the defendant or other member of the board with whom he acted had any knowledge thereof until nearly six months thereafter." And further, as bearing upon the question now under consideration, it was said: "Neither actual knowledge of the alleged erroneous inventory nor an intent to deceive is claimed, but appellant contends that both knowledge and intent must be imputed to him (defendant) because of the fact that he was a director and as president exercised a general supervision over the affairs of the company. We cannot assent to this contention. On the contrary, defendant as president and his co-directors were justified in relying upon subordinates and employees for data upon which to base their corporate action in declaring the dividend, and were justified, in the absence of anything constituting gross negligence, in accepting and acting upon their reports, which fully warranted defendant in making the representation"; in support of which several cases are cited. This statement of law was quoted, with approval in *Smeland* v. *Renwick et al.*, 50 Cal. App. 565 [196 Pac. 283]. So in the instant case, defendant, from information touching the condition of the company, was warranted in believing that the representation which he made to plaintiff was at that time true.

Neither, in our opinion, is the evidence sufficient to justify the finding made by the court that the representation made by defendant was a "positive assertion made in a manner not warranted by the information of the defendant making it," which, if sustained by the evidence, would bring the case within the second subdivision of section 1572 of the Civil Code, which declares actual fraud to consist of "the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true." What we have heretofore said is likewise applicable to this phase of the case. While

the representation was concededly untrue, nevertheless the information which the defendant had with reference to the condition of the company and upon which he based the representation, justified him in believing it to be true and was warranted by the information which he had upon the subject.

[2] Moreover, the representation was a mere statement of value, namely: "that the stock was worth $100 per share." It stands naked and alone, and as such must be deemed merely the opinion of Cross as to the value of the property which he was offering for sale to one with whom no confidential relation existed but who was dealing with him at arm's-length. The general rule is that a bare and naked statement as to the value of property, in the absence of confidential relations between the parties, is deemed the opinion of the party making the representation, and upon which the purchaser thereof has no right to rely, but acts upon his own judgment. Apparent exceptions found are due to statements of extrinsic facts affecting the value and with which the false representation is made or upon which it is based. (*Winkler* v. *Jerrue,* 20 Cal. App. 555 [129 Pac. 804]; *Ellis* v. *Andrews,* 56 N. Y. 83 [15 Am. Rep. 379]; *Schumaker* v. *Mather,* 133 N. Y. 590 [30 N. E. 755]; *Union Nat. Bank* v. *Hunt,* 7 Mo. App. 42; S. C., 76 Mo. 439.) Quoting from the syllabus in *Gustafson* v. *Rustemeyer,* 70 Conn. 125 [66 Am. St. Rep. 92, 39 L. R. A. 644, 39 Atl. 104], it is said: "The mere naked assertion of the value of property by a vendor to a purchaser during negotiations for a sale, though consciously untrue and relied upon by the purchaser to his hurt, does not, in the absence of special circumstances, constitute an actionable deceit." In the instant case there was no representation of extrinsic facts or special circumstances affecting the value of the stock.

We are forced to the conclusion that the mere naked statement made by defendant to plaintiff that the stock was worth $100 per share cannot be accepted otherwise than as an opinion in the nature of trade talk, and as such plaintiff was not justified in relying thereon.

The judgment is reversed.

Conrey, P. J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 21, 1922, and the following opinion then rendered thereon:

THE COURT.—Rehearing denied. Conceding the ruling of the trial court upon defendant's motion in striking out testimony of plaintiff, which constituted evidence of extrinsic facts and special circumstances affecting the value of the stock, to have been erroneous, as claimed by respondent, such error, in the absence of an appeal by plaintiff, who was the party aggrieved thereby, cannot be reviewed on an appeal by defendant, against whom the judgment was rendered. Neither, since it was stricken from the record, can we consider the testimony as evidence in support of the finding upon which the judgment is based.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 26, 1922.

All the Justices present concurred.