[Civ. No. 17250. Second Dist., Div. Three. Apr. 12, 1950.]

ROBERT H. LAWRENCE et al., Appellants, v. GEORGE R. DOTY et al., Respondents.

Martin H. Easton for Appellants.

Don R. Holt, Edward Henderson and Margaret Keller for Respondents.

SHINN, P. J.—This is an action of Robert H. Lawrence and wife against George R. Doty and wife for the rescission of a purchase by plaintiffs of a citrus grove for the sum of $80,000, of which $23,000 was paid down, and the balance secured by a note and trust deed. Plaintiffs had paid an additional $17,000 and interest at the time they brought their action. It was alleged in the complaint that plaintiffs were inexperienced in the operation of citrus groves and ignorant as to their value; that defendants represented that the grove contained 11 acres planted to oranges and 8 acres planted to lemons; that the soil was good; the property had an abundant supply of water from a well on the premises; that the grove was of top grade; that the trees were all of good root stock; that the fruit was not damaged by frost or cold; that the lemon trees were highly productive; that all trees were in a healthy condition; that the grove had a total of 800 lemon trees; that the crop then growing was worth $15,000; that the grove was worth $80,000 and would produce a net profit sufficient for the support of a family. It was alleged that the representations were made with intent to deceive plaintiffs, that they were untrue and that the property was worth not more than $40,000, which the defendants well knew. Plaintiffs made their purchase in January, 1946. The complaint alleged that they became suspicious as to the quality and value of the grove in the spring of 1948, that they caused the soil and water to be analyzed and the trees and location to be examined by experts, and that on or about July 7, 1948, the falsity of the representations was established and could not have been established at an earlier date. Plaintiffs gave notice of rescission July 21, 1948, demanded the return of their money and offered to account for any sums due from them to the defendants. Defendants denied the charges of fraud and alleged that prior to their purchase plaintiffs conducted a complete investigation of the property and its income, and purchased the same in reliance upon their own judgment and the advice of third persons. It was also alleged that in January, 1948, when the sum of $2,500 fell due on the note, plaintiffs applied for and were granted an extension to and including July 15, 1948, in which to make said payment, and that plaintiffs thereby confirmed and ratified their said purchase. After an extended trial the court made findings that defendants did not make any false or fraudulent representations, that all of defendants' representations were made honestly and with the reasonable belief on their part that the same were true, and

that on the date of plaintiffs' purchase the property had a reasonable market value of $80,000. It was found that prior to January 1, 1947, plaintiffs conducted a complete investigation of the property, including the soil, water, trees and crops growing thereon, and the income that had been produced therefrom prior to their purchase; that plaintiffs, after their suspicions were aroused, offered the property for sale at prices ranging from $65,000 to $95,000; that in January, 1948, they applied for a six months' extension of time for the payment of a $2,500 installment on the note, which was granted, and that plaintiffs by their operations of the property and other acts did confirm and ratify their purchase. Plaintiffs appeal from a judgment in favor of defendants.

As grounds for the appeal appellants claim insufficiency of the evidence to support any of the essential findings. Although they make a good argument upon the facts they emphasize the strength of their case, rather than the alleged weakness of the defendants' case, with relation to the following findings: (1) That defendants did not represent that the grove was a "top place"; (2) that the property was worth $80,000; (3) that plaintiffs did not rely upon the representations of defendants; (4) that defendants did not represent that the grove was growing upon good soil; (5) that defendants did not represent that the orchard had as one of its appurtenances a good water supply; (6) that the representations made by defendants were made honestly and with a reasonable belief that they were true; (7) that plaintiffs conducted a complete investigation of the property including soil, water, trees and crops prior to January, 1947, thereafter continued in possession endeavoring to sell the property, in January, 1948, obtained an extension of time for the payment of an installment of $2,500 and by their conduct did confirm and ratify their purchase. The court made 52 separate findings. They recite in great detail the history of the development and operation of the property from the time it was acquired in 1928 by defendants until plaintiffs' attempted rescission in July, 1948. We shall paraphrase these findings, inasmuch as they summarize the evidence and indicate the court's factual conclusions therefrom. In January, 1946 there were 741 lemon trees on the easterly 7.15 acres and 985 orange trees on the westerly 10.90 acres; also improvements consisting of a residence, other buildings, water well, pipe lines, irrigation system, windbreaks and roads of the total value of

$30,000. Over a 10-year period, 1936 to 1945, the gross receipts from oranges had averaged about $4,800 per year. For the years 1942-45, inclusive, gross receipts from lemons had been about $8,500 per year. When plaintiffs purchased there were approximately 5,453 boxes of oranges and approximately 4,805 boxes of lemons on the trees; from the time the trees came into bearing the grove had always been a good producer; it had been affected by a freeze only twice, in 1937 and February, 1946; plaintiffs knew of the latter freeze and inspected the trees before they made their purchase; when plaintiffs purchased the orange and lemon orchards were in good condition and producing the average quantity of fruit for the locality; the grove is in a good location but is better for lemons than for oranges; around the residence and other buildings there is an underlying clay bed which fact was made known by defendants to plaintiffs before the purchase, but all the remainder of the land is a deeper sandy loam which produces a good grade of oranges, and lemons of good quantity, of marketable quality and average size; defendants had never made an analysis of the soil as to its quality or depth; plaintiff Robert H. Lawrence before his purchase took upon the property his father-in-law, W. P. Thatcher, a citrus grower who lived near the Doty grove, also, William Phillips, manager of Mr. Thatcher's orchard and an experienced grower, also, John Newman, a friend of plaintiffs and manager of a company engaged in extensive citrus growing in Ventura County, experienced in citrus trees and soil; they tested the property with a soil tube, discussed the condition of the property, the trees, the type of soil and methods that should be used in operating the orchard; both said Newman and Phillips expressed their opinions to Robert H. Lawrence that the grove and the fruit thereon "looked alright to them"; before the purchase defendants exhibited to plaintiffs records of production of the grove for the years 1941-45 with packing house returns from the years 1936-45, inclusive, all of which were examined by plaintiffs; plaintiffs relied upon their own examination and the examination and opinions of Phillips, Newman and Thatcher and not upon any representations made by defendants, and after the freeze in February, 1946, and before the sale was consummated defendants offered to release plaintiffs from their agreement of purchase but plaintiffs refused the offer; plaintiffs marketed oranges and lemons in 1946 to the value of about $16,000 and in 1947 to the value of about $7,300.

There are at least three findings, any one of which is sufficient to support the judgment: (1) Defendants did not make any false or fraudulent representations; their representations were made honestly and in a reasonable belief they were true; (2) plaintiffs purchased in reliance upon their own judgment and not upon the representations of defendants; (3) plaintiffs ratified their purchase by remaining in possession from January, 1946, until July, 1948, and in requesting and obtaining a six months' extension for the payment of a $2,500 installment after they had knowledge of facts which caused them to believe that they had purchased an inferior grove.

The first finding, which we have combined from separate findings, is supported by the testimony of Mr. Doty that he made a complete disclosure of the production from the grove over a period of years; he represented it was a good grove on good soil but not that it was of top grade or quality; the grove had a sufficient water supply from a well on the premises but he made no representation as to the quality of the water. The court found that the soil and water were good, that the grove was a good one, which had produced and was capable of producing fruit in average quantities and of average quality for groves in the vicinity. The record contains sufficient evidence to support these findings, notwithstanding the fact there was evidence that neither the soil, water nor the trees was of the highest quality. There was testimony by competent witnesses that the grove compared favorably in these respects with other groves in the locality and that it came up to the representations of Mr. Doty. There was also expert testimony that the property was worth $80,000. It necessarily follows that if defendants' representations were true the court could not reasonably have found them to have been made in bad faith. But regardless of their accuracy the evidence tended to prove that all the statements of the defendants concerning the property were justified by the facts which were known to them. It was undisputed that the grove had produced as a good grove. Although it was developed through investigations made by defendants during the two and a half years they were in possession that the water from the well was saline and many of the trees were afflicted with one disease or another, the claim that defendants knew these facts and concealed or misrepresented them is not supported by the record. There was evidence that while the growth of the orange trees had

been retarded, this was not necessarily due to the quality of the water, and there was no evidence that defendants knew or had reason to believe when they sold the property that the water was not entirely suitable for citrus irrigation. The only water analysis ever made by defendants was not to determine its fitness for citrus irrigation but was in connection with the installation of a water softener for household use in 1938, and a copy of this analysis was given to plaintiffs by defendants prior to the purchase. There was expert testimony to the effect that the water supply was as good as the average in the locality although not of superior quality. While admitting that he knew that a disease known as gummosis had appeared in the grove, Mr. Doty testified that he informed plaintiffs of that fact. Another disease, dry bark, according to the experts, had made its appearance only within two years preceding the trial and there was no evidence that Mr. Doty knew of its existence at the time of the sale, or even that it had made an appearance in the grove at that time. Some of the trees were afflicted with cirrhosis but not to an unusual extent for the locality, and Mr. Doty testified that he had not discovered that any of his trees were so afflicted. Plaintiffs' briefs do not refer to any evidence that would overcome as a matter of law not only the testimony of Mr. Doty that he believed all of his statements to be true, but also the presumption that they were made honestly and in good faith. And in addition all the statements Mr. Doty admitted having made could properly have been deemed by the court mere expressions of opinion, honestly and reasonably entertained. (*Carter* v. *Seaboard Finance Co.*, 33 Cal.2d 564, 569 [203 P.2d 758] ; *Harting* v. *Cebrian*, 10 Cal.App.2d 10, 16 [51 P.2d 195] ; *Meeker* v. *Cross*, 59 Cal.App. 512 [211 P. 229].)

It would appear from the evidence that the court was almost required to find that plaintiffs acted upon their own judgment based upon the investigation they made. They went upon the property with experts and examined the trees and the soil. Plaintiffs' advisors found nothing wrong with the property and so informed plaintiffs. They were not hindered in their investigation nor persuaded to discontinue it, and the means for determining the facts were fully accessible. It is thoroughly established that under such circumstances the buyer will be deemed to have acted upon his own judgment, being satisfied with the result of his investigation. (*Cameron* v. *Cameron*, 88 Cal.App.2d 585 [199 P.2d 443] ; *Nielsen* v. *McKenna*, 8 Cal.2d 690 [67 P.2d 1044].) He will not be heard

to say that he made less than a full investigation unless he was hindered therein or persuaded by the representations or other actions of the seller to discontinue his inquiries before they were completed. (*Carpenter* v. *Hamilton,* 18 Cal. App.2d 69 [62 P.2d 1397].) Here, there is no evidence that plaintiffs failed to make a full investigation, or one that was satisfactory to them, because of their reliance upon the representations of defendants.

There was evidence that from a time soon after plaintiffs went into possession the grove was in charge of a manager who was experienced in citrus culture. Extensive tests and experiments were made and in October or November, 1947, plaintiffs began to doubt that the grove was what they expected it to be. But it is unnecessary to discuss the evidence from which the court concluded that plaintiffs had ratified their purchase and had not rescinded promptly after knowledge of facts which indicated to them that they had purchased an inferior grove. The other findings which we hold to be supported by the evidence are more than ample to support the judgment.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.