Filed 7/25/13  Masters v. Burton CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CAROLYN MASTERS et al.,<br><br>    Plaintiffs, Appellants, Respondents<br><br>v.<br><br>SCOTT BURTON et al.,<br><br>    Defendants, Respondents, Appellants. | 2d Civil No. B234555<br>2nd Civil No. B239447<br>(Super. Ct. No. 56-2008-00321433-CU-OR-VTA)<br>(Ventura County) |

This appeal is about errant golf balls and the $2.15 million sale of a residence at the Spanish Hills Country Club.  Appellants, Carolyn Master and Mark E. Moore, purchased the property knowing that it fronted a golf course fairway.  They were told that errant golf balls would land on the property.  (See e.g., *Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1231.)  Stray golf balls were such a common problem that the CC&R's required homeowners to (1) acknowledge the risks of property damage caused by errant gold balls, (2) assume the risk of property damage, personal injury, or death caused by errant golf balls, and (3) release, waive, discharge, and covenant not to sue past or present homeowners for liability arising out of errant golf balls.

Appellants sued the former owners (respondents Scott Burton and Linda Burton) and the Burtons' relocation company (respondents Executive Relocation dba SIRVA Relocation, LLC and SIRVA Relocation Credit, LLC (collectively SIRVA)) for concealment/non-disclosure of an errant golf ball hazard.  Having lost at trial, appellants

appeal from an order granting summary adjudication on a breach of contract cause of action and appeal from the judgment entered in favor of the Burtons and SIRVA on a rescission cause of action. The Burtons, in a separate appeal (B239447), contend that the trial court erred in denying their motion for $1.35 million attorney fees (Civ. Code § 1717) and ordering them to pay $45,000 discovery prove up costs (Code Civ. Proc., § 2033.420). We affirm.

*Facts & Procedural History*

On May 7, 2007, appellants entered into a $2.15 million contract to purchase the residence at 1708 Via Aracena, Camarillo, located on the 7th fairway at the Spanish Hills Country Club. Earlier that year, Scott Burton and Linda Burton listed the property for sale after Scott Burton changed jobs and relocated to Northern California. Burton's employer hired SIRVA, a third-party relocation company, to assist in the sale. Troop Real Estate, Inc. and real estate agent Laura L. Means listed the property as the Burtons' and SIRVA's broker.

Appellants wanted to live next to the golf course and were provided a copy of the CC&R's and written disclosures that there were errant golf balls.[1] A California Association of Realtors (CAR) Seller Property Questionnaire disclosed "some golf balls on property," a broken window repair, and roof tile and house stucco repairs. Appellants were also provided a Seller's Real Estate Transfer Disclosure Statement (Civ. Code, § 1102.6)[2] signed by the Burtons.

During the two month escrow, appellants visited the property several times and, on one occasion, brought a licensed home inspector. The inspection was uneventful until a golf ball hit a palm tree near the house, Moore said, "a golf ball just flew in and hit

---

[1] The Burtons signed a California Association of Realtors (CAR) Seller Property Questionnaire that there were "some golf balls on the property." Under the caption "Errant Golf Balls," a CAR Statewide Buyer and Seller Advisory warned "there is a possibility that golf balls may damage the Property or injure persons or pets on it." The SIRVA Homeowner's Disclosure Statement stated: "Are there any other neighborhood conditions or problems affecting the property?" The Burtons wrote: "Yes, some golf balls."

[2] All statutory references are to the Civil Code unless otherwise stated.

that palm tree." Linda Burton responded, "That happens sometimes." Before leaving, Moore and his son picked up 20 to 25 golf balls in the backyard and put them in a pile.

Appellant Carolyn Masters, a licensed real estate agent, acted as the buyer's agent for Moore and herself, and received a $53,000 real estate commission. Before escrow closed on July 16, 2007, Masters executed an Agent's Inspection Disclosure certifying that she made a reasonably competent and diligent inspection and saw no property conditions that required disclosure.

After escrow closed, appellants became concerned about the number of stray golf balls landing on the property, an average of three to four a day. Most of the golf balls landed away from the house but a few hit the house exterior stucco, a house window, the roof tiles, and the swimming pool. Appellants claimed it was a hazardous condition, moved out, and defaulted on the house mortgage.[3]

*The Lawsuit*

On June 20, 2008, appellants sued for damages and rescission. The first amended complaint alleges causes of action for breach of contract, rescission based on fraud and mistake, failure to make a statutory disclosure (§ 1102.6), and fraud. It alleges that the Burton's Real Estate Transfer Disclosure Statement (TDS; § 1102.6) failed to disclose "a severe problem of errant golf balls and that the frequency, trajectory, velocity and direction of errant golf balls coming onto the PROPERTY represents a significant hazard for injury to persons and damage to property which cannot be reasonably guarded against." The fourth cause of action for breach of contract alleges that SIRVA breached the purchase agreement by not disclosing known material facts affecting the value and desirability of the property and not executing a seller's Transfer Disclosure Statement pursuant to section

---

[3] The Burtons and SIRVA argue that the appeal is moot because the property was sold at a trustee's sale and rescission is no longer possible. On October 4, 2012, we denied a motion to dismiss the appeal that raised the same mootness issue. Although the status quo cannot be restored if the judgment is reversed and rescission ordered, the trial court has the authority to fashion a full and fair remedy including consequential damages for real estate commissions, escrow expenses, and interest on the money paid to purchase the property. (§ 1692; *Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1145.)

3

1102.6. Appellants claimed that the property had $0 market value and that they suffered at least $2.15 million damages.

SIRVA moved for summary adjudication.[4] The trial court granted summary adjudication on the breach of contract cause of action but kept SIRVA as a nominal defendant for purposes of "unwinding" the deal if appellants prevailed on the rescission cause of action. (See *Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1551-1552.)

Appellants dismissed the Burtons on the causes of action for failure to make a statutory disclosure (third cause of action), breach of contract (fourth cause of action), and fraud (fifth cause of action). After a 30 day trial, judgment was entered for the Burtons and SIRVA on the rescission causes of action for fraud and mistake. The trial court, in a statement of decision, found that the Burtons concealed the errant golf ball hazard but appellants failed to prove justifiable reliance. In post-trial motions, the trial court denied Burtons' motion for $1.35 million attorney fees (§ 1717) and ordered the Burtons to pay $45,000 prove up costs on three requests for admissions. (Code Civ. Proc., § 2033.420.) SIRVA was awarded $256,529.31 attorney fees.

*Summary Adjudication - SIRVA*

Appellants contend that that the trial court erred in granting summary adjudication on the breach of contract cause of action. Relying on *Shapiro v. Sutherland, supra,* 64 Cal.App.4th 1534 (*Shapiro*), the trial court concluded that SIRVA fully performed its disclosure obligations as a third-party relocation company and there were no material triable facts.

---

[4] Before the hearing on the motion for summary adjudication, appellants amended paragraph 52 of the First Amended Complaint to allege: "Defendants SIRVA and SIRVA CREDIT breached the real estate purchase contract, Exhibit C, in that SIRVA and SIRVA CREDIT knew or should have known that the BURTONS, MEANS and TROOP failed to make a full and complete disclosure of defects, that SIRVA and SIRVA CREDIT failed to make the required statutory disclosures under Civil Code § 1102, et seq., and SIRVA and SIRVA CREDIT failed to otherwise disclose to Plaintiffs facts materially affecting the value and desirability of the subject property which were known by SIRVA and SIRVA CREDIT and required to be disclosed under paragraphs 5 and 7 of the real estate purchase contract."

4

*" "*On review of a summary [adjudication], the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.]. . . . " [D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. . . ." [Citation.]' " (*Baines v. Moores* (2009) 172 Cal.App.4th 445, 455.)

Appellants argue that the seller of real property has a common law and statutory duty to disclose facts materially affecting the value or desirability of the property. (*Shapiro*, *supra,* 64 Cal.App.4th at p. 1544.) "A breach of this duty of disclosure will give rise to a cause of action for both rescission and damages. [Citation.]" (*Ibid*.) The duty to disclose sounds in tort, not contract. (See § 1102.13 damages limited to "actual damages"; *Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1544-1545.) "[S]tatutory disclosures are *not warranties* by the seller or seller's agent; nor are they a substitute for warranties or inspections that the parties actually obtain. Further, the seller's § 1102.6 (or § 1102.6d) disclosures are *not intended to be part of the purchase contract* between the buyer and seller. [Citations.]" (Greenwald & Asimow, Cal. Practice Guide, Real Property Transactions (The Rutter Group 2012) ¶ 4:360, p. 4-86.9.)

Appellants claim that SIRVA breached a contractual duty to make a statutory disclosure and knew or should have known there was a significant errant golf ball problem. We reject the argument because a relocation company's duty to disclose is limited to information in the company's personal knowledge. (§ 1102.4, subd. (a).)

In *Shapiro v. Sutherland, supra,* 64 Cal.App.4th 1534 (*Shapiro*), the seller (Sutherland) took a job transfer and hired a third party relocation company (Prudential) to sell his house. Sutherland executed a TDS that failed to disclose a noisy neighbor problem, signed a blank grant deed, and moved out. A year later, Prudential gave Sutherland's TDS to the buyer, believing it was accurate. (*Id.*, at p. 1547) Buyer agreed to conduct his own inspection. After closed escrow, buyer discovered the noise problem and sued Prudential.

The trial court granted summary judgment because Prudential did not know about the noise problem and never took possession of the property. (*Id.*, at p. 1546-1547.) The Court of Appeal affirmed, holding that "[i]f plaintiff is to recover against anyone for misrepresentation, it must be against the Sutherlands [sellers]." (*Id.*, at p. 1547.) For Prudential to be liable for negligent misrepresentation, "it would have to have made a false statement to plaintiff, honestly believing it to be true, but without a reasonable ground for such belief. However, if Prudential's belief was both honest *and* reasonable, then the misrepresentation would be an innocent one and there would be no liability. [Citation.]" (*Ibid.*)

Appellants argue that *Shapiro* is distinguishable because the relocation company did not acquire title before the property was transferred to the buyer. Here the Burtons deeded the property to SIRVA and SIRVA executed a grant deed transferring title to appellants. The "acquired title" argument fails because SIRVA never took possession or occupancy of the property. The first amended complaint states that SIRVA "acted as the agent[]" of the Burtons and was an intermediary in the sale The Burton/SIRVA grant deed was recorded July 16, 2007, the same day the SIRVA/Masters-Moore grant deed was recorded. Like *Shapiro*, the sale was actually a sale from the Burtons to appellants with SIRVA acting as the intermediary. SIRVA reasonably believed the property disclosures from the Burtons and the real estate agent (Laura Means) were accurate.

*Market Analysis Report*

Appellants argue that the Market Analysis prepared by Laura Means put SIRVA on notice that the property had a serious errant golf ball problem. The Market Analysis stated "large quantity of golfballs on one side of the house may be an issue" but "the area affected by the golfballs is limited and remote from the rest of this 1.76 acre property." The Market Analysis recommended a $2.39 million list price and projected that the property would sell for $2.3 million "AS IS." SIRVA had no duty to disclose the market

6

analysis to prospective buyers because it was a realtor's personal opinion of property value.[5] (*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 411-412.)

The information in the Market Analysis did not require a special disclosure.  It stated that golf balls were landing in a remote part of the lot, i.e., an orchard area that was shown to appellants.  It did not say that errant golf balls were landing on all parts of the property or hitting the house, patio, or swimming pool area.  When Laura Means prepared the Market Analysis, the Burtons told her about a large quantity of golf balls on the side of the house  and said the problem was corrected after the golf course was "changed to suit them."  It is undisputed that SIRVA had no conversation or communication with the Burtons, Troop Real Estate, or Laura Means about a large quantity of golf balls landing on the property or how it might affect the value of the property.  Nor are there triable material facts that SIRVA believed that Burton's disclosures or Means' Real Estate Disclosure Statement (saw golf balls on right side of house (nearest golf course)) were inaccurate and warranted further investigation.

Appellants argue that paragraphs 5 and 7 of the purchase agreement required that SIRVA execute and deliver its own statutory disclosure.  Multiple disclosures were provided including the "ERRANT GOLF BALLS" Statewide Buyer and Seller Advisory signed by the Burtons, a CAR Seller Property Questionnaire by the Burtons disclosing "some golf balls on the property,"  the Burtons' TDS, the Real Estate Agent's Inspection Disclosure by Laura Means, and the SIRVA Property Disclosure Addendum stating that SIRVA was a third party relocation company assisting the Burtons.   The CAR Statewide Buyer and Seller Advisory warned "there is a possibility that golf balls may damage the Property or injure persons or pets on it."

---

[5] The market analysis states: "this home rates among the finest.  Rarely does a property show this well. . . As a flag lot, this may not appeal to some buyers and that objection may be overcome by highlighting its location along the scenic golf course and its privacy from the roadway.  The large quantity of golf balls on one side of the house may be an issue and should be addressed with the Spanish Hills County Club.  However, the area affected by golf balls is limited and remote from the rest of this 1.76 acre property."

On a motion for summary judgment or summary adjudication, the pleadings define the issues. (*Hejmadi v. AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 536.) The first amended complaint states that SIRVA was hired "as an intermediary" to facilitate the sale, that the Burtons prepared a false TDS knowing that SIRVA would give the TDS to prospective buyers, and that the Burtons violated section 1102.6. The argument that SIRVA was contractually required to execute a seller's TDS because it used two grant deeds to facilitate the sale (i.e., Burton/SIRVA grant deed and a SIRVA/Masters-Moore grant deed) exalts form over substance. A section 1102.6 Transfer Disclosure Statement is not "part of the purchase contract or a separate contract containing conditions upon which the formation of the primary contract is based." (*Brasier v. Sparks* (1993) 17 Cal.App.4th 1756, 1760.)

Appellants assert that the statutory disclosure requirements (§ 1102 et seq.) are a term of the purchase agreement but that does not change the *Shapiro* analysis. Section 1102.4, subdivision (a) provides that no transferor may be held liable for any error or inaccuracy or omission in a disclosure statement if such "error, inaccuracy, or omission was not within the personal knowledge of the transferor . . . ." The purchase agreement and SIRVA Property Disclosure Addendum stated that SIRVA was selling the property in its present condition and acting as a conduit in the sale. Appellants signed the SIRVA Property Disclosure Addendum acknowledging that SIRVA "is a third party relocation firm assisting the former owner in the sale of this property" and that "buyer understands that SIRVA Relocation . . . [and] officers or employees have ever been in actual possession of the property."

A court is not required to close its eyes to an unmeritorious claim when ruling on a motion for summary adjudication. (*Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 69-70.) Consistent with *Shapiro, supra,* 64 Cal.App.4th at pages 1546-1548, the trial court correctly found that SIRVA fully performed its disclosure obligations under the purchase agreement. Even if we assumed that summary adjudication was erroneously granted, there was no prejudice or miscarriage of justice. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) Section 1102.13 provides that the failure to make a

8

proper statutory disclosure limits the purchaser to actual damages caused by the transferor's willful or negligent failure to perform any duty proscribed by section 1102 et seq. The trial court, after 30 days of testimony, found that SIRVA did nothing wrong and that the Burtons did not disclose the serious errant golf ball problem to anyone connected with the transaction.

*Defense Judgment - Rescission*

On the rescission causes of action based on mistake and fraud, the trial court found that the Burtons intentionally concealed an errant golf ball hazard but appellants did not prove justifiable reliance. The written statement of decision states: "The Burtons knew at the time they put their home up for sale that approximately a thousand errant gold balls a year (3 to 4 balls per day on the average) were landing in various locations on their premises below the orchard, particularly on the side of the yard closest to the 7th fairway, [and] . . . from time to time, . . . impacting on the walls and roof of their residence (causing damage) as well as landing in the BBQ and pool area in the backyard. [¶] At the time the Burtons put their house up for sale and filled out various disclosure forms, the Burtons knew that because of numerous errant golf ball impacts, they had to repair resulting damage to their residence's roof tiles, plaster walls and windows, and outdoor lights. [¶] . . . [T]he Burtons intentionally chose not to disclose to anyone connected with this transaction . . . this information . . . in order to enhance the saleability of their property."

The trial court found that appellants failed to make reasonable inquiries and that Carolyn Masters, acting as the buyers' real estate agent, breached a duty to investigate what caused the roof tile and house stucco damage. The statement of decision includes findings that Masters was "negligent" and notes that the trial court would have found for appellants had Masters specifically asked the Burtons "or their agent Means . . . whether golf balls had caused the need for the repairs to the house. . . ."

*Justifiable Reliance - Failure of Proof*

Appellants argue that "negligence" is not a defense to intentional misrepresentation. (See *Seeger v. Odell* (1941) 18 Cal.2d 409, 414.) Appellants, however, failed to prove justifiable reliance which is an essential element of fraud and concealment.

(*Ibid.*; *Coldwell Banker Residential Brokerage Co., Inc. v. Superior Court* (2004) 117 Cal.App.4th 158, 168 [active concealment requires that plaintiff show justifiable reliance]; *Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices* (1989) 207 Cal.App.3d 1277, 1285 [justifiable reliance is an element of negligent misrepresentation and constructive fraud].) " 'If the conduct of the plaintiff in the light of his [or her] own intelligence and information was manifestly unreasonable, he [or she] will be denied a recovery.' [Citation.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1240.)

Rescission based on fraud or mistake requires justifiable reliance. (*Podlasky v. Price* (1948) 87 Cal.App.2d 151, 162-163; *Lawrence v. Doty* (1950) 96 Cal.App.2d 937, 942.) The buyer's failure to ascertain the precise nature and scope of a disclosed property condition can defeat the claim that there was actual and justifiable reliance. (§§ 2079; 2079.5; *Pagano v. Krohn* (1997) 60 Cal.App.4th 1, 12.) Where the buyer is apprised of a problem affecting the value and desirability of the property, the burden is on the buyer to investigate the problem and assess its severity. (*Id.*, at pp. 8-9 [water intrusion problems]; *Assilzadeh v. California Federal Bank, supra,* 82 Cal.App.4th at p. 412 [disclosure of construction defect litigation that was settled].) "[N]eglect of a legal duty" precludes rescission based on mistake. (§ 1577; *Lawrence v. Shutt* (1969) 269 Cal.App.2d 749, 765-766.)

The question here is whether the evidence compels a finding of justifiable reliance. (See *Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571 [discussing failure of proof standard of review].) The defense judgment will be upheld unless the plaintiff's evidence is (1) "uncontradicted and unimpeached," and (2) "of such a character and weight as to leave no room for a judicial determination that it is insufficient to support a finding . . . ." (*Id.*, at p. 571.) The issue is not whether appellants "failed to prove their case by a preponderance of the evidence. That was a question for the trial court and it was resolved against them. The question for this court to determine is whether the evidence compelled the trial court to find in their favor on [the issue of justifiable reliance.]" (*Id.*, at pp. 570-571.)

10

The evidence shows that appellants visited and inspected the property several times, were provided errant golf ball disclosures, were told that stray golf balls were landing on the property, and that appellants picked up golf balls in the backyard. Appellants had played golf in the past and were sophisticated in real estate matters. During the property inspection, Moore saw a golf ball hit a palm tree and commented on it. Linda Burton told him, "Sometimes that happens."

Appellants' trial attorney argued "there was no golf ball in the backyard" and that appellants never saw a golf ball. It was the focal point of the case. Masters conceded that Moore had a "sensitivity to golf balls hitting the house" and that it would be "a deal breaker."

The trial court asked Moore to explain. Moore said that he would not have purchased the property had he known golf balls were hitting the house and causing stucco damage. Moore believed that a single golf ball strike to the house was too great a risk. If it happened once, it "could happen again at any time. And it's uncertain as to where the ball would wind up . . . . And that would potentially mean someone in the backyard could be hurt . . . . I would say, no. I would not have bought the house."

Carolyn Masters, Moore's partner and real estate agent, confirmed that Moore would not have purchased the property had he been told that a stray golf ball ever hit the house or swimming pool. Masters also believed that Moore would not have bought the property had he known or been told that errant golf balls landed in the area between the house and the pool.

Appellants received written golf ball disclosures warning appellants to conduct their own investigation. The purchase agreement had a similar warning and stated the "the Property is sold (a) in its PRESENT physical condition . . . and (b) subject to Buyer's investigation rights." [6] Appellants asked the Burtons' real estate agent (Laura Means) to show them where stray golf balls were landing. Means stood at the base of the

_____

[6] Paragraph 7.C. warned: "You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important."

11

orchard and made a "sweeping type gesture" indicating that golf balls were landing in both the yard and orchard. The trial court found that appellants decided not to ask "any follow up questions or conduct any investigation . . . . Nor did [appellants] ever make any inquiry of Linda Burton regarding errant gold balls and/or why she and her husband had noted 'some golf balls' as a concern on . . . the real estate disclosure statement."

As the buyer's real estate agent, Masters had a statutory duty to make a reasonably competent and diligent visual inspection and disclose to Moore "all facts materially affecting the value or desirability of the property that an investigation would reveal." (§ 2079; *Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 644.) Moore had a statutory duty to exercise reasonable care as a prospective buyer. (§ 2079.5; *Assilzadeh v. California Federal. Bank*, *supra,* 82 Cal.App.4th at p. 413.) Merely "because a buyer has a right to rely on the representations of a seller or a seller's agent does not mean that the buyer has no duty to inspect the property to be purchased. When there is a duty, a failure to inspect the property may be below the standard of care and negligence and, in some cases, may preclude a finding of justifiable reliance on the other party's misrepresentation or failure to disclose." (Miller & Starr, Cal. Real Estate (3rd ed. 2011) § 1:149, pp. 607-608.) "The test is not only whether the [buyer] acted in reliance upon a misrepresentation, but whether he was justified in his reliance. [Citation.]" (*Kahn v. Lischner* (1954) 128 Cal.App.2d 480, 489.)

Appellants were told about errant golf balls, about prior repairs to the house stucco and roof tiles, about a broken window, and were present when a golf ball hit a palm tree near the house. They received a Seller Property Questionnaire that warned: "Seller's disclosures are not a substitute for your own investigation, personal judgments or common sense." During the two month escrow, they were provided a copy of the property CC&R's acknowledging the potential for errant golf ball damage to the house stucco, roof tiles, and windows. Section 15.18 of the CC&R's entitled, "Golfing Indemnity," stated that if appellants purchased the property they assumed the risk of any property damage, personal injury, death or any trespass or nuisance caused by errant golf balls.

The trial court concluded there were enough "red flags" and disclosures to put appellants on notice that errant golf balls were a problem and required further investigation. It found that Masters, acting as the real estate agent for buyers/appellants, "had a duty to look beneath the surface beauty of the residence and make a formal inquiry into the cause of the disclosed damage which . . . was . . . manifestly consistent with errant golf ball strikes."

Justifiable reliance is a subjective standard measured by the buyer's conduct, intelligence, and information. (*Seeger v. Odell*, *supra,* 18 Cal.2d at p. 415.) It is a question of fact for the trial court's determination (*Guido v. Koopman* (1991) 1 Cal.App.4th 837, 843; *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 503.) "[T]he issue is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience. [Citations.]" (*Ibid*.) On review, we are precluded from reweighing the evidence or determining witness credibility. (*Ibid*.) This is especially so where the trier of fact finds an essential element of plaintiff's case was not proven. Failure of proof is a daunting standard of review where the plaintiff challenges a "no proof" finding on appeal. (*Roesch v. De Mota, supra,* 24 Cal.2d at p. 571.) Appellants make no showing that the evidence is so "uncontradicted and unimpeached" that it compels a finding of justifiable reliance or reasonable mistake. (*Ibid*.)

*Burton Appeal - Attorney Fees*

The Burtons appeal the denial of their motion for $1.35 million fees based on an attorney fee provision in the purchase agreement. (§ 1717.) "As a general rule, attorney fees are awarded only when the action involves a claim covered by a contractual attorney fee provision and the lawsuit is between signatories to the contract." (*Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 379-380.) The Burtons are not signatories to the purchase agreement which provides: "In any action . . . between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller . . . ."

In *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124 (*Reynolds*), our Supreme Court held that a nonsignatory defendant has a section 1717 reciprocal right to attorney fees where (1) the nonsignatory defendant is sued on the ground that he stands in

13

the shoes of a party to the contract, and (2) the defendant would be liable for fees had the signatory plaintiff prevailed on the contract action. (*Id.*, at p. 128.) In *Reynolds,* defendants were sued on the theory they were alter egos of the corporate entity that signed promissory notes with an attorney's fee provision. Defendants were held not liable on the notes and awarded attorney fees under the reciprocity provision of section 1717. The *Reynolds* court reasoned: "Had plaintiff prevailed on its cause of action claiming defendants were in fact the alter egos of the corporation [citation], defendants would have been liable on the notes. Since they would have been liable for attorney's fees pursuant to the fees provision had plaintiff prevailed, they may recover attorney's fees pursuant to section 1717 now that they have prevailed." (*Id.*, at p. 129.)

Unlike *Reynolds,* there is no allegation or claim that the Burtons are alter egos of SIRVA. The Burtons were sued on the theory that, as prior owners, they concealed an errant golf ball hazard. Had appellants prevailed at trial, the Burtons would not be liable for attorney fees because the purchase agreement limits attorney fees to the buyer (appellants) and the seller (SIRVA). (*Id.*, at pp. 128-129.) As non-signatory defendants, the Burtons have no reciprocal right to attorney fees.

*Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541 illustrates this prininciple. There, the buyer unsuccessfully sued the seller and seller's broker for rescission and compensatory damages. The Court of Appeal held that the seller's broker could not recover attorney fees because it was not a signatory to the purchase agreement. (*Id.*, at pp. 546-547.)

The same principle controls here. Had appellants prevailed on the rescission cause of action, the Burtons would not be liable for attorney fees but SIRVA would. (See e.g., *Hastings v. Matlock* (1985) 171 Cal.App.3d 826, 840-8481 [attorney fees awarded against signatory defendant on action to rescind land sale contract]; *Shapiro, supra,* 64 Cal.App.4th at p. 1551, fn. 18.) Fundamental principles of contract law dictate that a defendant may not enforce a contractual attorney's fee provision unless he or she is a party to the contract. (*Super 7 Motel Associates v. Wang, supra,* 16 Cal.App.4th at pp. 544-545.)

14

The Burtons argue that the CC&R's have an attorney's fee provision. Appellants, however, did not sue on the CC&R's nor did the Burtons successfully defend based on the covenant-not-to-sue clause in the CC&R's. The action was for rescission of the purchase agreement, not enforcement of the CC&R's. (See e.g., *Diamond Heights Village Assoc., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 307.)

Citing *Jones v. Drain* (1983) 149 Cal.App.3d 484, the Burtons argue that attorney fees should be granted to a nonsignatory defendant where it would be inequitable to deny fees. The argument is based on the theory that if a plaintiff alleges the right to recover attorney fees, then plaintiff is estopped from claiming that the nonsignatory defendant who prevails at trial is not entitled to fees. The equitable estoppel doctrine is no longer followed by our courts and contradicts *Reynolds*. (*Sessions Payroll Management, Inc. v. Noble Construction Company, Inc.* (2000) 84 Cal.App.4th 671, 681-682; *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 897.) "The goal of section 1717 is full mutuality of remedy *between parties to a contract*, whether plaintiffs or defendants, in the matter of attorney fees. [Citation.]" (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1113, italics added.) The motion for attorney's fees was properly denied.

*Discovery Prove Up Costs*

The Burtons argue that the trial court erred in ordering them to pay $45,000 prove up costs for unreasonably denying three requests for admissions. (Code Civ. Proc. § 2033.420) Before trial, requests for admissions (RFAs) were served on the Burtons, asking them to admit or deny whether they "believed" errant golf balls caused damage to the house window, the roof tiles, and the house exterior stucco prior to January 6, 2007 (the date they executed the TDS). The Burtons categorically denied the RFAs and argued that they did not have to admit the RFAs unless they actually saw a golf ball hit the house.

The trial court found that the Burtons were "word-smithing" to avoid liability. This gamesmanship is exemplified by Linda Burton's testimony that, prior to the sale, she heard the loud sound of something hitting the house. Burton was asked whether she assumed golf balls were hitting the roof or house, and answered "I never gave it a thought." Scott Burton was asked why, in responding to RFA about the broken window, he did not

15

believe the house window was broken by a golf ball.  Burton testified that "in order to believe, I have got to witness something."  The trial court found that Burton's statement "is absolutely incredible to this Court."

Section 2033.420 is designed to reimburse a party for reasonable costs to prove the truth of a RFA, which if properly admitted, would have expedited or shortened the trial.  (*Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 865.)  The Burtons' prior knowledge of golf ball strikes to the house was central to the case.  Although it was a simple case about errant golf balls, the trial took more than 30 days.  The trial court did not abuse its discretion in ordering the Burtons to pay $45,000 prove up costs.  (*Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 637, fn. 10.)

The judgment is affirmed.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

16

Frederich H. Bysshe, Judge

Superior Court County of Ventura

_____

Peter A. Goldenring and James E. Prosser; Goldenring & Prosser, for Carolyn Masters and Mark E. Moore, Plaintiffs/Appellants and Respondent.

Jeffrey Huron, for Scott Burton and Linda Burton, Defendants and Appellants

Finch Law, Brent M. Finch.  Klapach & Klapach, Joseph S. Klapach, for Executive Relocation, dba SIRVA Relocation LLC and SIRVA Relocation Credit, L, Defendants and Respondent.